LOUISVILLE FERTILIZER CO. v. STRICKLAND.

(Circuit Court, N. D. Georgia. April 14, 1910.)

No. 114.

BILLS AND NOTES (§ 477*)—ACTIONS—DEFENSES—WANT OF CONSIDERATION—IMPEACHMENT OF SETTLEMENT—PLEADING.

Defendant executed notes to plaintiff in settlement of an account for materials purchased, and, after some of them matured, made a payment thereon and gave renewal notes for the balance due, and at the same time signed a contract expressly reciting that the arrangement was in full settlement of all matters between the parties. In an action on such notes, defendant filed an answer, alleging that, when the settlement was made, he did not have a copy of the account, but accepted the statement of plaintiff's agent as to the amount of the same, and his promise to send a statement and to correct any errors therein, which promise he did not keep, but fraudulently included in the account a charge for a car load of material which was never delivered, which fact was not known to defendant when he signed the renewal notes and contract. Held, that such answer did not state grounds for impeaching the settlement for fraud or mistake, nor any sufficient defense to the notes, especially where it did not allege the date or any facts relating to the alleged false charge; the allegation of fraud being too general and indefinite, and defendant's mistake, if any, being due solely to his own negligence.

[Ed. Note.—For other cases, see Bills and Notes, Dec. Dig. § 477.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep't Indexes

Action by the Louisville Fertilizer Company against A. Strickland. On demurrer to amended answer. Demurrer sustained.

J. M. Neel, Neel & Neel, and Chas. G. Wilson, for plaintiff.
Thos. W. Milner & Son and Anderson, Felder, Rountree & Wilson, for defendant.

NEWMAN, District Judge. This cause is now heard on a demurrer to the pleadings and amended pleadings. The pleadings in the case are necessary to an understanding of the questions made and to the determination. The declaration in the case is as follows:

"The Louisville Fertilizer Company, a citizen of the state of Kentucky, and incorporated by the laws of said state, complains of A. Strickland, a citizen of the state of Georgia and an inhabitant of the Northern District of Georgia, Northwestern Division, and for cause of complaint shows the following:

"(1) Plaintiff shows that on the 21st day of December, 1908, at the city of Nashville, in the state of Tennessee, defendant made his four certain promissory notes, each for the principal sum of $907.61, payable to the order of himself at the Bank of Cartersville, Cartersville, Ga., respectively, on March 1. 1909, May 1, 1909, July 1, 1909, and September 1, 1909, and then and there for value received indorsed each of said notes in blank and delivered the same to plaintiff, the defendant's own genuine signature being subscribed to each of said notes, and also indorsed on each.

"(2) Plaintiff here sets out a copy of each of said notes as follows, to wit:

" '$907.61                        Cartersville, Ga., Dec. 21st, 1908.
" 'March 1st, 1909, after date, I promise to pay to the order of myself nine hundred seven 61/100 dollars at Bank of Cartersville, Cartersville, Ga., value received.                        A. Strickland.'
"Indorsed on back of note: 'A. Strickland.'

" '$907.61                        Cartersville, Ga.,
" 'Nashville, Tenn., Dec. 21st, 1908.
" 'May 1st, 1909, after date, I promise to pay to the order of myself nine hundred seven 61/100 dollars at Bank of Cartersville, Cartersville, Ga., value received.                        [Signed] A. Strickland.'
"Indorsed on back of note: 'A. Strickland.'

" '$907.61                        Cartersville, Ga., Dec. 21st, 1908.
" 'July 1st, 1909, after date, I promise to pay to the order of myself nine hundred seven 61/100 dollars at Bank of Cartersville, Cartersville, Ga., value received.                        [Signed] A. Strickland.'
"Indorsed on back of note: 'A. Strickland.'

" '$907.61                        Cartersville, Ga., Dec. 21st, 1908.
" 'September 1st, 1909, after date, I promise to pay to the order of myself nine hundred seven 61/100 dollars at Bank of Cartersville, Cartersville, Ga., value received.                        [Signed] A. Strickland.'
"Indorsed on back of note: 'A. Strickland.'

"(3) Plaintiff further shows that at the same time and place and for the valuable consideration therein recited the defendant executed and delivered to plaintiff his certain written contract a copy of which is as follows:

" 'This instrument witnesseth that:
" 'Whereas, the undersigned, A. Strickland, of Cartersville, Ga., executed three notes for $1,333.33 each, payable to the order of the Louisville Fertilizer Co., and due, respectively, Dec. 1st, 1908, Dec. 15th, 1908, and Jan. 1st, 1909; and
" 'Whereas, the Louisville Fertilizer Company has this day agreed to accept in lieu of the above-mentioned notes, the following notes signed this day by

the undersigned, A. Strickland, to wit: Four notes for $907.61 each, payable to himself and indorsed in blank and due, respectively, March 1st, May 1st, July 1st, and Sept. 1st, 1909, at the Bank of Cartersville, Cartersville, Ga.:

" 'Now, therefore, for and in consideration of one dollar ($1.00), to me in hand paid this day and the premises aforesaid, I, A. Strickland, of Cartersville, Ga., hereby agree and bind myself, my heirs, administrators and assigns, to pay each of the above-mentioned notes for $907.61 promptly when due, and, in the event all or any one of said notes are placed with an attorney for collection, I further agree to pay 10 per cent. of the amount due thereon as an attorney's fee.

" 'As a further consideration of the acceptance of the above-mentioned notes for $907.61 by the Louisville Fertilizer Co., I, the undersigned, A. Strickland, also agree to waive, release, and relinquish any and all claims, debts, or. demands of whatsoever kind or nature which I may have against the Louisville Fertilizer Co., of Louisville, Ky., and the Cartersville Fertilizer Co., of Cartersville, Ga., it being the intention of this instrument and the execution of said notes this day that the same are a complete and full settlement of all claims, debts, or demands whatsoever between the undersigned and said fertilizer companies.

" 'In witness whereof, I have hereunto signed my name this 21st day of December, 1908.                                    [Signed]   A. Strickland.

" 'Witnesses to Signature:

"    '[Signed]   Garnett S. Andrews.

"    '[Signed]   Clarence T. Boyd.'

"(4) Plaintiff shows that by his said written contract the defendant bound himself to pay each of said notes for $907.61 promptly when due, and stipulated that, in the event all or any one of said notes should be placed with an attorney for collection, he, the defendant, would pay 10 per cent. of the amount due thereon as an attorney's fee.

"(5) Plaintiff further shows that each of said notes at the maturity thereof was presented at the Bank of Cartersville, Cartersville, Ga., for payment, and demand for payment made upon defendant, but he then and there wholly failed and refused to pay all or any one of said notes, and still fails and refuses to pay the same or any portion thereof, and the defendant now owes to plaintiff on said notes the aggregate principal sum of $3,630.44, besides the sum of $86.17 for interest at the rate of 6 per cent. per annum to the 22d day of October, 1909.

"(6) Plaintiff further shows that it has been necessary for it to employ an attorney for the collection of its said debt, and for that purpose it has placed said notes in the hands of J. M. Neel, a practicing attorney at Cartersville, Ga., and therefore defendant owes to plaintiff, under the terms of his said contract, copied in paragraph 3 above, the further sum of $371.66 for attorney's fee as stipulated in said contract.

"(7) It is further shown that more than 10 days before the filing of this suit plaintiff by its said attorney at law gave defendant written notice of its intention to bring this suit against him to the November term, 1909, of this honorable court, for the recovery of the principal and interest and attorney's fees due on said notes and said contract.

"(8) Wherefore, plaintiff brings this its suit and claims judgment against defendant for the aforesaid sum of $3,630.44 principal debt, besides the sum of $86.17 for interest at the rate of 6 per cent. per annum to October 22, 1909, and the further sum of $371.66 for attorney's fee, together with such future interest as may accrue on said principal debt from October 22, 1909, at the rate aforesaid, and also all costs. Plaintiff further prays that process may issue requiring the defendant to be and appear at the November term, 1909, of this honorable court to be held in and for the Northern District of Georgia, Northwestern Division, on the third Monday in November, 1909, then and there to answer plaintiff's complaint."

'There was an answer in this case to which the plaintiff demurred in writing. It is unnecessary to set defendant's original answer out in

full because so much of it as is material here is restated in the amended answer since filed. The amended answer is as follows:

"And now comes the defendant in the above-stated case, and, after leave of the court, amends his original answer filed in this case by adding thereto the following to paragraph 8 of original answer.

"This defendant avers that the promissory notes sued on in this case are predicated upon a fraudulent account in favor of the plaintiff against this defendant. During the years 1907 and 1908 defendant operated a plant for the manufacture of fertilizers in the city of Cartersville, Ga., and purchased his supplies in part from the plaintiff. Defendant, together with other things, bought of plaintiff a considerable quantity of 'tankage,' a substance used in the manufacture of fertilizers, and from time to time plaintiff furnished to defendant statements of his, defendant's, account. On or about the ———— day of ————, 190—. the agent of plaintiff, O. G. Bright, stated that he was in a great hurry to catch a train out of town, and insisted upon defendant's making and delivering to plaintiff his promissory notes in settlement of the account which plaintiff had against defendant. Defendant was not familiar with the facts showing the true state of his indebtedness to plaintiff. He had lost or the same had been stolen from his office all the data, consisting of invoices and statements of account, which had been previously furnished by plaintiff to him, which fact was well known to plaintiff's said agent, for he had been so informed by this defendant. Plaintiff's said agent urged upon defendant to close up the account by the execution and delivery of the three certain promissory notes, each for the sum of $1,333.33, immediately, so that he could catch the incoming train, asserting positively that the account was absolutely correct, and that, if defendant would sign and deliver to him the notes, they could afterwards check up and correct any mistakes which might be discovered. Defendant at that time did not suspect that there was any fraudulent item or items contained in the account, and relying entirely upon the representation of plaintiff's said agent that the account was correct, and having no data at hand or means of knowledge outside of the statement and representations of plaintiff's said agent, and defendant having no personal knowledge of the various items contained in said account, and having no time or opportunity then and there to confer with any one of his employés who might have information touching the correctness of said account, and being urgently pressed by plaintiff's agent to close said account by notes, defendant then and there executed and delivered the aforesaid three promissory notes to said agent of the plaintiff.

"And defendant avers that afterwards, to wit, on the 21st day of December, 1908. he was in the city of Nashville, Tenn., and there met in person T. G. Tinsley, Jr., the agent of the plaintiff, who requested of defendant a payment on the debt evidenced by the aforesaid three promissory notes, and offering to take the balance due on the debt in installments, the same to be evidenced by four promissory notes. Defendant had not at that time, to wit, December 21, 1908, discovered that any fraud had been perpetrated upon him at the time he closed up the account with plaintiff's agent as aforesaid at Cartersville, and, still being under the impression from the misrepresentations as to the correctness of his account as aforesaid that he justly owed to plaintiff the full amount expressed in said promissory notes agreed to pay to plaintiff the sum of $500, and execute four promissory notes for the balance of the debt. This was agreed to and the money paid, and the notes which are sued upon in this case were then and there executed and delivered to plaintiff's said agent. Defendant in a short time thereafter discovered that a fraud had been perpetrated upon him by the agent of the plaintiff at the time the three first mentioned promissory notes were executed and delivered in closing up the account which plaintiff held against him. Defendant avers that there was a false and fraudulent item of one car load of 'tankage' of the value of $1,000 charged against this defendant. Defendant at the time was not aware of this false item in said account, has no data or memorandum from which he can give the exact date of said false item, but avers that in said account he was falsely charged with said car load of 'tankage.' consisting of ———— tons, of the value of $1,000, which plaintiff never furnished, nor was the same ever received by this defendant. Defendant avers that said O. G. Bright, plaintiff's agent as

aforesaid, knew at the time he represented to defendant that said account was correct that said representation was false, and his promise that he would, after the making and the delivery of the notes, check over the account and correct any mistakes, was false, said Bright knowing at the time that his representation that the account was correct was false, and he at the time never intended to check up said account and correct mistake therein as he promised, and only made said false promise to mislead and induce defendant then and there to execute and deliver said notes.

"Defendant avers that, relying upon said representations as the truth, he acted then and there upon said false representations by executing and delivering the promissory notes as aforesaid, to his injury and damage to the extent of $1,000.

"Defendant avers that said T. G. Tinsley, Jr., agent for plaintiff, procured the execution and delivery of the notes sued on in this case, and the execution of the contract set out in plaintiff's petition as a cover of the fraud which had previously been perpetrated upon defendant; and with full knowledge himself of the fact that the three original notes were predicated upon the false account, which he had falsely represented to be correct, he induced defendant to make payment on the debt evidenced by said three promissory notes, and to give the notes sued on as evidence of the balance of the debt, well knowing then and there that this defendant had not yet discovered the fraud as aforesaid which had been practiced upon him. Defendant charges that said T. G. Tinsley, Jr., agent as aforesaid, thus procured the execution of the notes sued on and the cancellation of the three notes which were given to close up said fraudulent account in order that he might in future urge that defendant was estopped by his conduct from setting up as a defense the fraud which had been practiced upon him as aforesaid.

"This defendant further alleges that the consideration of $1 as expressed in the alleged contract set out in plaintiff's petition as having been paid by plaintiff is untrue in fact. No such consideration was paid to defendant. Defendant avers that the three notes mentioned in the first paragraph of said contract of $1,333.33 each, due and payable at the times mentioned, were the identical three notes which were predicated upon the fraudulent account which plaintiff induced defendant to close by the execution and delivery of said notes, upon the false representation that the account was correct, as more fully hereinbefore set forth by this defendant in this answer. And the notes mentioned and described in the second paragraph of said contract are the notes sued on in this case, and the sole consideration supporting said notes in part is the debt evidenced by the three original notes mentioned, which were founded upon the fraudulent account as aforesaid, and, by reason of the fraud which was practiced upon defendant in procuring said notes originally in settlement of said fraudulent account as more fully hereinbefore set forth in this answer, defendant avers that said contract should not be enforced against him for more than the sum found to be due to plaintiff after allowing to defendant a credit of $1,000; the same being the amount falsely charged against this defendant for 'tankage' as hereinbefore fully set forth.

"And defendant avers that, at the time he signed said contract, he was ignorant of the fact that he had been defrauded in the manner hereinbefore set forth at the time he made and delivered the original three promissory notes given in closing up said fraudulent account. Defendant avers that his signature to said contract was procured by plaintiff's said agent T. G. Tinsley, Jr., with a full knowledge of all the facts and circumstances hereinbefore set forth of and concerning the fraudulent and false representations as to the correctness of the account of the plaintiff against defendant upon which the notes sued on are predicated, and with the fraudulent purpose of using the same as an estoppel against this defendant's defense against said notes on account of the fraud practiced against him as more fully hereinbefore set forth.

"Defendant charges that the agents of plaintiff, to wit, O. G. Bright and T. G. Tinsley, Jr., conspired together to cheat and defraud this defendant and procure from him the execution and delivery of the notes given as aforesaid, and afterwards to cover up said fraud procured a payment on said notes and a renewal of the debt by the execution and delivery of the notes and contract sued on as more fully set forth hereinbefore. Defendant charges that said

Bright furnished to defendant the statements and invoices of account with plaintiff. He had knowledge of the fact that defendant had made no entry on his own books of the contents of said statements and invoices, but kept them on file in his office. Since defendant discovered the fraud which had been practiced upon him he has been informed that Bright had a key by which he could enter the office of defendant. The papers, statements, and invoices aforesaid were lost or stolen from defendant's office, and said Bright at the time he urged defendant to close up the account as aforesaid had knowledge of the fact that said statements and invoices were missing from defendant's office, and, taking advantage of defendant's situation and inability to check up said account and correct any mistake therein, urged upon him to make and deliver said notes, well knowing at the time that the representations made by him that said account was correct were false.

"Defendant charges upon information and belief that at the time said Bright had possession of the statements and invoices which had been furnished to him by said Bright, and which had been lost or stolen from defendant's office, and well knew that, if defendant could have time and opportunity to examine the invoices and statements which had been lost or stolen, he could readily discover the falsity of the account which he was urging defendant to close by note. Defendant has often since he discovered the fraud which was practiced upon him by said Bright and Tinsley, agents as aforesaid, demanded of plaintiff's agents that they make and furnish to him a copy of the account showing the items entering into and making the consideration of the notes sued on, and they have at all times absolutely refused to comply with defendant's demands, well knowing that an investigation of the matter would make a full discovery of the fraudulent item of one car load of 'tankage' which was never received by defendant.

"Defendant charges that plaintiff has now in its possession the identical statements and invoices which were extracted from defendant's office, that defendant demanded that they be returned to him, but plaintiff's agents, Bright and Tinsley, refused to comply with his demand, insisting that defendant, having closed the account by his notes and contract, should settle the matter according to the terms of said notes and contract.

"Defendant prays that he be allowed to prove the facts hereinbefore set forth, and that plaintiff's suit to be abated to the extent of $1,000, the sum which defendant charges as having been fraudulently charged against him in the manner hereinbefore set forth in this his answer."

The original demurrer was renewed to this amended answer. The demurrer was on the following grounds:

"(1) Because the plea and answer do not state facts sufficient to constitute a valid and legal defense.

"(2) Because the averments in said plea and answer with regard to the fraud on which the defendant relies as a defense are vague, indefinite, and uncertain, and do not raise any issue with regard thereto. Plaintiff specially demurs to paragraph 8 of said answer on the ground that the averments as to the fraud alleged to have been perpetrated by plaintiff on this defendant are vague, indefinite, and uncertain, and do not specifically set forth the facts in connection therewith. It specially demurs to the following words in said eighth paragraph, to wit, 'and promised that afterwards the account can be checked over and any error therein corrected and proper credits allowed defendant upon said notes,' on the ground that this is an effort to vary, add to, and change a written contract by parol."

It will be seen from the foregoing that defendant, Strickland, first gave to the plaintiff three notes for $1,333.33 each, due, respectively December 1 and 15, 1908, and January 1, 1909, and that on December 21, 1908, Strickland paid the plaintiff $500 and gave four new notes for $907.61 each, due March 1, May 1, July 1, and September 1, 1909. The difference between the aggregate of the four notes of $907.61

each and the $500 cash paid is evidently the interest on the original notes up to the date of the new arrangement.

It will also be perceived by the paper executed simultaneously with these last notes that Strickland also "agreed to waive, release, and relinquish any and all claims, debts, or demands of whatsoever kind or nature which I may have against the Louisville Fertilizer Company, * * * it being the intention of this instrument and the execution of said notes this day that the same are a complete and full settlement of all claims, debts or demands whatsoever between the undersigned and said fertilizer companies." It is evident that at the time this paper was executed Strickland must have been making a claim of some kind on the fertilizer company. Unless he had been, such an agreement as that made would have been very unnecessary work. The only claim of any kind which the record shows he had or which is insisted upon at all is the claim with reference to this missing car load of "tankage."

I think the case here made is fully controlled by the decision of the Supreme Court of Georgia in Dyar v. Walton, Whann & Co., 79 Ga. 466, 7 S. E. 220. This is a Georgia contract, and the notes were made in Georgia and payable in Georgia. The facts in the Supreme Court decision referred to are stated in the opinion of Chief Justice Bleckley as follows:

"Dyar, having been an agent for selling fertilizers on time for cotton, and for collecting the cotton when due and forwarding it to his principals, settled up with them on July 5, 1882, gave his four notes under seal for the balance they claimed, aggregating $356.55, each note concluding with a mortgage upon realty as security for its payment; and, the notes having matured, he resisted a foreclosure of the mortgages, contending that the real balance against him was only $29.55. The notes all bore interest from date, and promised 10 per cent. additional for attorney's fees. Two of them were due and payable November 1, 1882, and two on January 1, 1883. He set forth his defense by what he denominated an equitable plea, and sought to uphold it chiefly by his own testimony. He contended that he was unprepared for the settlement; that he was absent from home at his plantation, pressed with other business, and his books and papers were not at hand; that he was too unwell to make or examine the calculation; that the agent who represented the other party in making the settlement was urgent and pressing to close the matter up; that said agent did not know how the account stood, save by the account which he had with him, and this did not embrace the particulars or details of the account, but was only a memorandum or partial statement, and that the agent said he would on returning to Atlanta, where his principals' books were, send to Dyar an itemized account, from which and from Dyar's books and papers the true balance might be ascertained, and, if the notes and mortgages were for too much, they should be credited down and stand only for the true debt; and that with this express understanding he, Dyar, went into the settlement, allowed the agent to make the calculation, trusted entirely to the calculation and to the agent's promise that errors should be corrected, and executed the paper accordingly. He further alleged that the agent declined to leave with him the partial account or the calculation, and did not send the itemized account, and that he, Dyar, on examining his own books and papers soon afterwards, ascertained that errors had been committed by which the balance against him was raised from $29.55 to $356.55. These errors consisted in not giving him credit for commissions, $150, in charging him with too much cotton, $39, and in charging him with uncollected notes payable in cotton by purchasers of fertilizers, $138. These notes were discussed at the settlement; the agent saying that Dyar was liable for them. On the foregoing facts, he contended that the mortgages were the result of fraud, artifice, and mistake, and prayed that they might be set aside as void, or credited down to his real indebtedness, and foreclosed for that sum only."

The opinion proceeds with the discussion of the case as follows:

"At the trial he was his own principal witness, and, most of his testimony being excluded, the jury found against him. He moved for a new trial on more than 20 grounds, all of which were overruled. Numerous as they are, they are all rooted, at least, in the theory that, though the account was closed by settlement, it is still open. The defense, when analyzed, resolves itself into an effort to vary a written contract by parol, and to shun the consequences of gross negligence. If at the time the notes and mortgages were given there was an agreement entered into that they should be varied by the result of subsequent examination, that agreement ought to have been embodied in the written contract, or in some other writing whereby to establish it. The omission to do either is decisive of this branch of the defense. There is no allegation in the plea, and no indication in the evidence, that this agreement was intended to be embraced in any writing, or that it was left out by fraud or mistake. Its effect, if allowed to have any, would be to overrule the writings executed as the result of the settlement, and to reopen the settlement altogether—[citing Sawyer v. Vories, 44 Ga. 662; Cutts v. Johnson, 49 Id. 370; Henderson v. Thompson, 52 Id. 149; Howard & Soule v. Stephens, Id. 448; Alston v. Wingfield, 53 Id. 18; Rodgers v. Rosser, 57 Id. 319; Wynn, Shannon & Co. v. Cox, 5 Id. 373; Logan v. Bond, 13 Id. 192; Wyche v. Winship, Id. 208; Griswold v. Scott, Id. 210; Gamble v. Knott et al., 40 Id. 199; Newell v. Stiles, 21 Id. 118; Simmons v. Martin, 52 Id. 570; Delaney v. Anderson, 54 Id. 587; Scaife v. Beall, 43 Id. 333; Smith v. Newton, 59 Id. 113; Mitchell v. Insurance Co., 54 Id. 289; Sims v. Crawford, 56 Id. 31; Haley v. Evans, 60 Id. 159]. As a case of fraud, there is nothing to stand upon but the making and breaking of the parol agreement. No trick, art or device to entrap, deceive or mislead is shown. On the subject of mistake, it is clear that anything like diligence would have guarded against it effectually. There was no effort or intention by Mr. Dyar to be accurate. He expected to be accurate afterwards, but not then. He relied on the parol agreement, and not on the pending settlement to reach a correct result."

And then continues, speaking of Mr. Dyar, the defendant in the case:

"The only mistake he made was in treating the settlement as having no finality, though he signed and sealed its results. If he was too unwell to transact business, he knew it then as clearly as he afterwards knew it, and with such knowledge he ought to have abstained from making any settlement which he was unfit to make. He does not allege that he thought himself competent, but afterwards found out that he was not. So, too, if his absence from home, his books and papers not being present, rendered it impracticable for him to make a settlement by which he was willing to abide, he ought not to have made any. What was the sense of going into a settlement and closing it up by notes and mortgages when he was not prepared to do so? If he was unprepared, it was reckless disregard of his lack of preparation which brought about the result. He knew then the importance of his books and papers. Their importance is not an after-discovered fact. It could not have been less plain to him then than it is now that before going into a settlement upon matters involving the state of his books and papers, or on which they would throw light, was to act the part of a negligent and imprudent man. Courts do not attempt to guard men against their own rashness and folly, but will leave them as free agents to protect themselves. A settlement deliberately made, and closed up by solemn writings deliberately executed, is not a thing to be opened as a matter of indulgence to gross negligence, though in consequence of such negligence one party obtained an advantage over the other. There was no artifice employed to draw Mr. Dyar into this settlement. And even if he trusted to the agent then representing the adverse party, as to some matters of law involved, he had no right to take his law from that source unless he was willing to abide by it, but ought to have obtained such advice as he needed, if he did need any, from sources better informed or more friendly to his interest. He cannot complain if the courts afford him no better justice than he administered to

himself in a settlement voluntarily made. The very object of that settlement, if it had any object, was to fix upon a standard of justice. He gave his consent to that standard. He deliberately measured his liability in dollars and cents to the company he had been representing, and he signed and sealed the evidence which he must have known might be used as a guide to the courts in administering remedies against him to enforce his liability. Pattison v. Building & Loan Association, 63 Ga. 373; Bostwisk v. Duncan, 60 Ga. 383."

The present case is even a stronger case against the defendant than was the Dyar Case, because here the defendant, after giving the first notes, and after two of them had matured, paid part cash, gave new notes and executed the agreement set out in the plaintiff's declaration, expressly stipulating that this last arrangement was a "full settlement" between the defendant, Strickland, and the fertilizer company. There should be an end to matters of this sort at some time, and, if the defendant can now open this agreement, it seems that he could do so at any time, no matter how many contracts and agreements he made. But, even if the defendant could open and go behind this solemn agreement, he does not in my opinion set up such facts in his plea as would justify him in doing so. Although he claims in his plea that the notes he originally gave embraced one car load of "tankage" which he never received, he fails in any way to point out the time at which this particular car load of "tankage" is claimed to have been delivered and which car load of "tankage" it was. Certainly abundance of data is available to him to have set up this fact in such way that the plaintiff could meet the claim. If the defendant knows that he received one car load of "tankage" less than he should have received, he certainly should be able to say which car load of "tankage" it was, and when it was claimed to have been delivered. The answer is unsatisfactory in this respect.

In addition to this, that portion of the answer which seems intended to charge positive fraud on the part of the plaintiff does so, taking it all together, more by inference than otherwise.

I do not believe that the answer sets up a good defense to these notes and this agreement, first, because I do not believe the defendant can now go behind these last notes and the written agreement executed at the same time; and, second, even if he could, he fails to show the plaintiff when and how the plaintiff wronged him and as to what particular car load of "tankage" was not delivered.

The demurrer to the answer will be sustained.