*R. E. Dinsmore,* for plaintiff in error. *R. D. Smith,* contra.

## 10569.  HARDY *v.* SPARKS.

1. There being evidence to sustain the verdict, the general grounds of the motion for a new trial are without merit.

2. It is contended that the verdict against the defendant is unauthorized for the reason that at the time of the levy of the attachment and at

the time of the trial and judgment the legal title to the automobile in question was vested in the plaintiff in attachment and not in the defendant. There is no merit in this ground of the motion. See *Johnson* v. *Walter J. Wood Stove Co.*, 6 *Ga. App.* 65 (64 S. E. 287), where it is held: "Where an attachment for purchase-money of personal property to which the plaintiff ·in attachment has reserved title is served by seizure of the property, before the property can be levied upon and sold under final judgment and execution the plaintiff must convey it by quitclaim to the defendant. But this conveyance is not necessary before the issuance of the attachment and the seizure of the property thereunder."

3. It is alleged that the court erred in failing to submit to· the jury the question of failure of consideration. The court fully instructed the jury on the questions of express warranty and implied warranty and fraud and deceit, which necessarily included the doctrine of a failure of consideration; and therefore this ground of the motion is without merit.

4. It is alleged that the court erred in failing to charge the jury on recoupment, which was set up as one of the defenses. The evidence conclusively showed that if there were any defects in the car, they were waived by the defendant after he had run the car for some time, he signing one of the series of notes given for the purchase-price, which had been overlooked when the trade was made, and the evidence fails to show that the defendant called the attention of the plaintiff to any defects in the car, or offered to rescind the trade. Therefore, if the failure of the court to charge on the subject of recoupment was error at all, it was harmless.

DECIDED NOVEMBER 19, 1919.

Attachment; from city court of Floyd county—Judge Nunnally. April 23, 1919.

*W. B. Mebane,* for plaintiff in error.

*L. H. Covington, L. A. Dean,* contra.

SMITH, J. This is a purchase-money attachment for the sum of $200, the purchase-price of a certain automobile, which is represented by a series of promissory notes. The defendant filed a traverse to the attachment, in which he alleged that there had been a failure of consideration, and that the notes were void because they hade been secured by fraud. The jury returned a verdict for the full amount of the plaintiff's claim. The defendant made a motion for a new trial, which was overruled, and he excepted.

The 1st, 2d, and 3d headnotes need no elaboration; but, inasmuch as the ruling made in the 4th headnote, that the failure of the court to charge on the subject of recoupment, if error at all, was harmless, is dependent on the evidence adduced at the trial, we make the following brief statement of certain portions of the

testimony which show that the sums claimed by the defendant by way of recoupment were expended by him for numerous repairs caused by his careless and improper running of the automobile in question, and not through any fault or fraud on the part of the plaintiff. The plaintiff testified: "Mr. Hardy [the defendant] came in to see me about buying the car, and I took him in the car and rode over Third Avenue, and up to North Rome and back with him. While on North Broad Street the car stopped, and I started the car again. The car stopped because it had not been in use much as it should have been, and only needed to be loosened up by running. . . It was a 1914-model car. I told the plaintiff when I sold him the car that it had been run about 18 months. On the day the plaintiff bought the car he signed seven of the notes, and he overlooked one of the eight notes. . . On Tuesday afternoon, after selling the car on Saturday, Sheriff Smith reported to me that a car of mine was over on Trash Alley. The car was brought to the McCartha Garage on Tuesday afternoon, and Mr. Hardy and Mr. McCartha came to look over it. . . I saw the defendant in there, and I went to him and called his attention to the fact that he had overlooked signing one of the notes, and he signed the note at that time. . . He never made any complaint to me about the car. After the attachment was sworn out and since the sheriff's levy on the car, I saw Mr. Hardy driving this car, and it was running all right. Since then I have frequently seen Mr. Hardy driving this car, and it seemed to be running all right. . . It was in good condition when delivered to him. . . At the time Mr. Hardy bought this car he told me that he did not know how to run a car." The witness further testified that "when they found the car in Trash Alley on Tuesday they found the switch on, batteries run down, one tire off, no gas in it, gasoline line broken, one rim, the car very muddy, and the casings on the back wheels showed that they had been in the mud; they looked as if they had been spun trying to pull somebody out of a hole." The defendant in his testimony admitted that he knew nothing whatever about the operation of an automobile, and testified that after the car was ditched in Trash Alley he carried it to "McCartha to see what could be done to make it run, and paid him $80 for going over the car and working on it. This $80 was for casings and a new battery, except McCartha fixed the gas line. I then took the car

out again and still it would not run, and in about three weeks took it down to the Moss Garage, and Mr. Moss worked on the car, trying to get it to run, and he charged me $40 for what he did. . . Altogether I expended more than $140 in trying to put this car in a good condition." S. R. McCartha testified that he was in the garage business, and that at the time the defendant bought this car it was in good condition; that the car was brought to his "garage on Tuesday after it was bought on Saturday. I went over to Trash Alley and had the car brought over to my place of business, and Mr. Hardy paid for this. The only work that I did on the car was to fix the gas line which amounted to $1.05. The remainder of the $80 bill was for a battery and new casings and tubes. . . The batteries were bad and I put in a new battery, which was the large item. The switch had been left on over in Trash Alley, and the battery was drained and run down. I had never known this car being a bad condition before Mr. Sparks sold it to Mr. Hardy, and I frequently drove the car and it ran all right." R. M. McCartha testified that he had driven the car several times before it was sold, and that it was in a good condition and ran all right.

*Judgment affirmed. Jenkins, P. J., and Stephens, J., concur.*