TERMINAL GRAIN CORPORATION, a
corporation, Plaintiff and Respondent,

v.

Glenn FREEMAN, Defendant
and Appellant.

TERMINAL GRAIN CORPORATION, a
corporation, Plaintiff and Appellant,

v.

Glenn FREEMAN, Defendant
and Respondent.

TERMINAL GRAIN CORPORATION, a
corporation, Plaintiff and Respondent,

v.

Glenn FREEMAN, Defendant
and Appellant.

Nos. 12258, 12325 and 12335.

Supreme Court of South Dakota.

Argued June 5, 1978.
Decided Oct. 12, 1978.

Harold Deering, Jr., of May, Adam, Gerdes & Thompson, Pierre, for plaintiff, appellant and respondent.

Glenn Freeman, pro se.

HANSON, Retired Justice.*

This is an action to recover damages for failure to deliver grain according to two alleged oral contracts. Plaintiff Terminal Grain Corporation (Terminal Grain) is a grain company doing business in Sioux City, Iowa. Defendant Glenn Freeman (Freeman) is a farmer residing near the town of Midland in Jackson County, South Dakota. He represented himself at the trial and also on the appeals to this court.

In March 1972, Terminal Grain commenced an action against Freeman in the District Court of Woodbury County, Iowa, alleging the same cause of action involved in the present South Dakota action. Freeman appeared specially and challenged the jurisdiction of the Iowa Court. After a hearing the court concluded there were not the required minimum contacts to confer jurisdiction and the action should not be tried in Iowa because of the doctrine of forum nonconveniens. The Iowa Court entered its order sustaining in its entirety the special appearance of defendant.

Terminal Grain commenced the present action in South Dakota in 1976. Freeman's answer, among other things, contained two counterclaims for damages based on allegations of libel and slander and malicious prosecution. The extensive pretrial proceedings resulted in the following action by the trial court:

(1) The dismissal of Freeman's libel and slander counterclaim as it was barred by the statute of limitations contained in SDCL 15–2–15,

(2) Summary judgment was granted to Terminal Grain dismissing Freeman's counterclaim for malicious prosecution, and

(3) Freeman's motion for summary judgment on the cause of action alleged in the complaint was denied.

Freeman appealed from the summary judgment dismissing his counterclaim for malicious prosecution and from the denial of his motion for summary judgment on the main cause of action.

The remaining issues were submitted to a jury, resulting in a verdict for Terminal Grain in the amount of $89.80 on Count I of the complaint and a verdict for Freeman on Count II of the complaint. Both parties appealed from the verdict and final judgment. The three separate appeals have been combined for hearing and determination in this court.

The evidence relating to the grain transaction involved is sharply conflicting. A statement of facts in a light most favorable to a prevailing party, order or judgment is impossible, as some of the issues relate to pretrial motions and the jury rendered a

* In accordance with SDCL 16–1–5.

split verdict in favor of both parties. It is necessary, therefore, to summarize the conflicting facts according to the evidentiary version of both parties.

It is undisputed that in the spring of 1972 Freeman sold some of his 1971 wheat crop to Kenneth Wheeler, a trucker residing in Midland, South Dakota. Wheeler paid for the wheat with his personal check and re-sold the wheat to Terminal Grain. Freeman was entirely satisfied with this sale to Wheeler. At the time, almost all of the grain handled or hauled by Wheeler was delivered to Terminal Grain in Sioux City. Wheeler was an independent trucker and never was an officer, agent, or employee of Terminal Grain. However, Wheeler would negotiate sales of grain between various farmers and Terminal Grain "to get the hauling." Also, at times, Wheeler would buy grain from farmers and re-sell to Terminal Grain, as he did with Freeman's 1971 wheat crop. Wheeler operated his trucking business at his home in or near Midland.

Late in August 1972, according to company witnesses, Terminal Grain needed 38,000 bushels of wheat to fill a river barge, and a premium would be paid for such grain. Wheeler called Freeman about this special deal. As a result of their telephone conversation Freeman went to the Wheeler home later that day. In Freeman's presence Wheeler called Dwayne Maher, Merchandising Manager of Terminal Grain. During their telephone conversation Wheeler said Freeman was interested in selling 8,000 bushels of his wheat. Maher quoted a price of $1.65½ a bushel. Wheeler informed Freeman of the offer and the latter said "sell it." Wheeler then told Maher to send out a contract. Later that night Freeman called Wheeler on the telephone and said he wanted to defer selling 4,000 bushels until after January 1, 1973, for tax purposes. The next day Wheeler called Maher who agreed, over the phone, to the deferred delivery date and quoted a price of $1.71 per bushel on that 4,000 bushels. Wheeler testified he informed Freeman of the results of such telephone call. Accordingly, Maher prepared two written confirmations of the two oral agreements and mailed

them to Freeman on August 31, 1972. No written objections to the confirmation orders were ever made by Freeman.

In September 1972, Wheeler removed approximately 4,000 bushels of wheat from Freeman's farm and delivered them to Terminal Grain. Freeman received payment for the five loads of grain by five checks issued by Terminal Grain. Due to a mistake, Terminal Grain split the 4,000 bushels between the two contracts, resulting in an $89.80 overpayment to Freeman on the $1.65½ contract. Shortly after this time the price of wheat advanced substantially. Shortly after January 1, 1973, Freeman informed Wheeler he was not going to make delivery of the remaining 4,000 bushels of wheat. Fair market value of wheat at the time varied between $2.25 and $2.30 per bushel. Because of Freeman's refusal to deliver, Terminal Grain commenced this action for damages for the difference between the contract price and the fair market price at the time of nondelivery.

In contrast to Terminal Grain's evidence, Freeman denied going to or being in Wheeler's home at any time during August 1972, and he further denied that Wheeler ever called Terminal Grain at any time in his presence. According to Freeman, Wheeler called him on the telephone in late August 1972 about buying his 1972 wheat crop. In the course of their conversation Freeman informed Wheeler he was interested in selling only about half his crop. Wheeler quoted a price satisfactory to Freeman so he agreed to sell 4,000 bushels to Wheeler. Terminal Grain was never mentioned. The 4,000 bushels of wheat was removed by Wheeler's trucks and Freeman received payment by five checks issued by Terminal Grain. The form of payment was cleared up to Freeman's satisfaction when he heard at his "coffee club" that Wheeler might have an interest in Terminal Grain.

Thereafter, when the price of wheat advanced in the fall of 1972 Freeman stopped at the Wheelers' home to see about selling the balance of his wheat. In the course of their conversation Wheeler agreed to buy

the remaining 4,000 bushels, but before an agreement was made Wheeler suggested that Freeman check his records as the wheat might be under contract. Accordingly, Freeman went home and in searching his records found two written confirmation orders for the sale of his wheat to Terminal Grain. The confirmation orders were signed only by Dwayne Maher. In this regard, Freeman testified he had no prior knowledge of the confirmation orders and no knowledge, recollection, or record as to when they were received. He thought his wife must have received and put them in the files. His attorney advised him the confirmation orders did not constitute valid binding contracts so he refused to deliver any wheat under them.

### APPEAL NO. 12258

In this appeal Freeman first alleges error in the summary dismissal of his counterclaim for damages because of Terminal Grain's alleged malicious prosecution of the Iowa and South Dakota actions against him.

The essential elements of an action for malicious prosecution are stated in *Kunz v. Johnson,* 74 S.D. 577, 582, 57 N.W.2d 116, 119, as follows:

(1) the commencement or continuation of an original criminal or civil judicial proceeding; (2) its legal causation by the present defendant against plaintiff, who was defendant in the original proceeding; (3) its bona fide termination in favor of the present plaintiff; (4) the absence of probable cause for such proceeding; (5) the presence of malice; (6) damage conforming to legal standards resulting to plaintiff.

■ Contrary to Freeman's contentions, the trial court correctly ruled there was probable cause for the commencement of the Iowa and South Dakota actions as the pretrial record showed, as a matter of law, that Terminal Grain consulted with and acted upon the advice of competent counsel before instituting any action against Freeman. In a prior case, involving the same

subject, this court held the advice of an attorney admitted to practice law is conclusive of the existence of probable cause, if the advice is sought in good faith and given after a full disclosure of the facts within the client's knowledge and information. *McIntyre v. Meyer,* 81 S.D. 417, 136 N.W.2d 351. See also *Huntley v. Harberts,* S.D., 264 N.W.2d 497.

The dismissal of the malicious prosecution counterclaim may further be sustained by the absence of another essential element of such an action, i. e., at the time of the summary judgment dismissing the alleged cause of action there had been no bona fide termination of any action in favor of Freeman on the merits. The Iowa action had been dismissed for lack of jurisdiction, and the South Dakota action had not been tried or terminated in any manner.

■ Freeman also contends in this appeal he was entitled to summary judgment against Terminal Grain, as a matter of law, because there was no written contract for the future purchase of grain signed by both parties as required by SDCL 38-14-5, which provides:

When any grain or flaxseed is purchased by a public warehouse or miller engaged in the purchase of grain and flaxseed for delivery after the purchase agreement is made, the terms of such agreement shall be reduced to writing in duplicate, showing the date, place, kind, grade, and quality, number of bushels, price agreed upon, period allowed for delivery, and the signatures of the seller and buyer or their agents. One copy shall be retained by the seller and the other by the buyer as a permanent record in his office.

In the recent case of *Bradley Grain Co. v. Peterson,* S.D., 267 N.W.2d 836, this court considered the purpose and effect of the above statute and its companion act, SDCL 38-14-6, which makes the violation of any provision in Ch. 38-14 a Class 2 misdemeanor. The majority opinion of the court stated:

[T]he unlawful purpose or act against which the statutes are addressed is the discrimination in the purchase of grain. Respondents do not plead that appellant was discriminatory, nor was there any evidence of discrimination presented to the trial judge on the motions for summary judgment. Therefore, lacking any attempt to connect the contract even remotely with the unlawful transaction contemplated by the statute, the contract would be valid and enforceable. 267 N.W.2d at 838.

Accordingly, in the absence of a plea or evidence of discrimination in Terminal Grain's purchase of grain under the alleged oral contracts in the present action the provisions of SDCL 38–14–5 have no application and Freeman's motion for summary judgment was properly denied.

## APPEAL NO. 12325

In this appeal Terminal Grain alleges error in the following instruction given to the jury:

Contracts may be oral unless there is a statute requiring them to be in writing. In this case, there is a South Dakota statute requiring that when any grain is purchased by a public warehouse or miller for future delivery, the terms of such agreement shall be reduced to writing in duplicate, showing the date, place, kind, grade and quality, number of bushels, price agreed upon, period allowed for delivery, and the signatures of the Seller and Buyer or their agents.

Thus, an oral contract of the type alleged in Count I and II of the Complaint is not enforceable, unless (1) there has been a partial performance of that contract, or (2) the principle of equitable estoppel is applicable to that contract.

▮ Paragraph two of the instruction embodies and applies the provisions of SDCL 38–14–5 to the facts in the present case. In the absence of a plea or evidence of discrimination in the purchase of grain by Terminal Grain, under the alleged oral

contracts, the statute had no application. *Bradley Grain Co. v. Peterson,* supra. It was error, therefore, to so instruct the jury.

Terminal Grain also alleges error on the refusal of the trial court to instruct the jury on the Uniform Commercial Code provisions contained in SDCL 57–3–1 and SDCL 57–3–2. SDCL 57–3–1 is a general statute of frauds providing as follows:

Except as otherwise provided in §§ 57–3–2 and 57–3–3 a contract for the sale of goods for the price of five hundred dollars or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker. A writing is not insufficient because it omits or incorrectly states a term agreed upon but the contract is not enforceable under this section beyond the quantity of goods shown in such writing.

The above statute of frauds has been held applicable in similar actions for damages involving oral contracts in excess of $500.00 between an elevator/buyer and a farmer/seller for nondelivery of grain at a future date. *Farmers Cooperative Elevator Co. of Revillo v. Johnson,* S.D., 237 N.W.2d 671, and *Farmers Elevator Co. of Elk Point v. Lyle,* S.D., 238 N.W.2d 290. However, the court had no occasion to consider the application of SDCL 57–3–2 in either case. This exception to the Uniform Commercial Code general statute of frauds provides:

Between merchants if within a reasonable time a writing in confirmation of the contract and sufficient against the sender is received and the party receiving it has reason to know its contents, it satisfies the requirements of § 57–3–1 against such party unless written notice of objection to its contents is given within ten days after it is received.

As a farmer, Freeman contends he is not a "merchant" within the contemplation of the above statute and it, therefore has no

application to him. The term "merchant" is defined in SDCL 57–2–7 as meaning

a person who deals in goods of the kind or otherwise by his occupation holds himself out as having knowledge or skill peculiar to the practices or goods involved in the transaction or to whom such knowledge or skill may be attributed by his employment of an agent or broker or other intermediary who by his occupation holds himself out as having such knowledge or skill.

Also, the term "between merchants" is defined to mean "in any transaction with respect to which both parties are chargeable with the knowledge or skill of merchants." SDCL 57–2–9.

The official comment to § 2–104 of the Uniform Commercial Code definition of "Merchant" and "Between Merchants" states in part:

1. This Article assumes that transactions between professionals in a given field require special and clear rules which may not apply to a casual or inexperienced seller or buyer. * *

2. The term 'merchant' as defined here roots in the 'law merchant' concept of a professional in business. The professional status under the definition may be based upon specialized knowledge as to the goods, specialized knowledge as to business practices, or specialized knowledge as to both and which kind of specialized knowledge may be sufficient to establish the merchant status is indicated by the nature of the provisions.

In similar factual cases the courts which have considered whether or not a "farmer" is or may be considered a "merchant" under the above Uniform Commercial Code provisions are almost equally divided in their opinions. The courts in Illinois, Texas, Missouri, Ohio, and North Carolina have held farmers to be merchants under various facts and circumstances, in the following cases: *Sierens v. Clausen,* 60 Ill.2d 585, 328

N.E.2d 559, in which the farmer, for the past five years, had sold his crops to grain elevators for both cash and on future delivery contracts; *Continental Grain Company v. Harbach,* N.D.Ill., 400 F.Supp. 695, involving a case arising in Illinois, in which the defendant farmer had been president of a farming corporation for several years, was familiar with the Chicago Board of Trade, and who had made commodity future contracts for soybeans, corn and potatoes through a brokerage company; *Billings v. Joseph Harris Co., Inc.,* 27 N.C.App. 689, 220 S.E.2d 361, holding a farmer to be a merchant bound by the standards of the marketplace in which he operated, because the extensive nature of his farming enterprise was commercial as opposed to bare minimal subsistence agriculture; *Nelson v. Union Equity Co-op Exchange,* Tex.Civ. App., 536 S.W.2d 635, concluding the issue was for the fact finding court to determine; *Campbell v. Yokel,* 20 Ill.App.3d 702, 313 N.E.2d 628, indicating that a farmer who regularly sells his crops is a "professional" in that business and a "merchant" when selling; *Continental Grain Co. v. Martin,* 5 Cir., 536 F.2d 592, a case arising in Texas which followed the Texas rule in affirming the fact finding court; *Rush Johnson Farm, Inc. v. Mo. Farmers Ass'n,* Mo.App., 555 S.W.2d 61, in which the defendant had received a written confirmation of his agreement to sell grain. The court said:

[T]he only obligation the UCC placed upon him was to write a note to [the grain company] stating he had not agreed to sell 6,000 bushels, if that were the fact. That is not a great burden to place upon anyone who is capable of owning and operating a large farming operation and who knows the marketing procedures for his produce * * *; 555 S.W.2d at 65.

And see *Ohio Grain Co. v. Swisshelm,* 40 Ohio App.2d 203, 318 N.E.2d 428.

On the other hand the courts in Iowa, New Mexico, Utah, Kansas, Arkansas, and Alabama have held that a farmer is not a merchant in the following cases: *Sand Seed*

812

*Service, Inc. v. Poeckes,* Iowa, 249 N.W.2d 663; *Fear Ranchers, Inc. v. Berry,* 10 Cir., 470 F.2d 905, in a case arising out of Nevada; *Lish v. Compton,* Utah, 547 P.2d 223; *Decatur Cooperative Association v. Urban,* 219 Kan. 171, 547 P.2d 323; *Cook Grains, Inc. v. Fallis,* 239 Ark. 962, 395 S.W.2d 555; and *Loeb and Company, Inc. v. Schreiner,* 294 Ala. 722, 321 So.2d 199.

In arriving at its conclusion that the defendant farmer/seller was not a "merchant" within the meaning of the Uniform Commercial Code, the Kansas Court in the *Decatur Cooperative Ass'n v. Urban* case, supra, said:

[T]he appellee neither 'deals' in wheat, as that term is used in 2–104 nor does he by his occupation hold himself out as having knowledge or skill peculiar to the practices or goods involved in the transaction. The concept of professionalism is heavy in determining who is a merchant under the statute. The writers of the official UCC comment virtually equate professionals with merchants—the casual or inexperienced buyer or seller is not to be held to the standard set for the professional in business. The defined term 'between merchants', used in the exception proviso to the statute of frauds, contemplates the knowledge and skill of professionals on each side of the transaction. The transaction in question here was the sale of wheat. Appellee as a farmer undoubtedly had special knowledge or skill in raising wheat but we do not think this factor, coupled with annual sales of a wheat crop and purchases of seed wheat, qualified him as a merchant in that field. The parties' stipulation states appellee has sold only the products he raised. There is no indication any of these sales were other than cash sales to local grain elevators, where conceivably an expertise reaching professional status could be said to be involved. 547 P.2d at 328–329.

■ We agree with the reasoning of the Kansas Court and with the other courts which hold the average farmer, like Free-man, with no particular knowledge or experience in selling, buying, or dealing in future commodity transactions, and who sells only the crops he raises to local elevators for cash or who places his grain in storage under one of the federal loan programs, is not a "merchant" within the purview of the exception provision to the Uniform Commercial Code statute of frauds. Through training and years of experience a farmer may well possess or acquire special knowledge, skills, and expertise in the production of grain crops but this does not make him a "professional," equal in the marketplace with a grain buying and selling company, whose officers, agents, and employees are constantly conversant with the daily fluctuations in the commodity market, the many factors affecting the market, and with its intricate practices and procedures. Accordingly, the trial court did not err in refusing to instruct the jury on this issue.

APPEAL NO. 12335

This is an appeal by Freeman from the judgment because of the insufficiency of the evidence to establish an oral contract, excessive verdict, error in allowing the complaint to be amended, and numerous other alleged erroneous rulings by the trial court. We have reviewed all of Freeman's allegations of error with care and find none worthy of extended comment. It is sufficient to state that none constitute reversible or prejudicial error.

DISPOSITION

■ It would serve no useful purpose to reverse or to remand this action to the trial court for retrial on any of the issues. There is ample credible evidence to sustain the verdict for Terminal Grain on Count I of the complaint. The wheat sale involved was a completed transaction and it is immaterial whether or not the sale was made under a written or oral contract with Wheeler, or through Wheeler for Terminal Grain.

On a retrial of the issues involved in Count II of the complaint the trial court would be obligated to instruct the jury that the Uniform Commercial Code statute of frauds contained in SDCL 57–3–1 applied to the transaction rather than the special statute of frauds in SDCL 38–14–5. As Freeman is not a "merchant" within the contemplation of SDCL 57–3–2, the defense of the general statute of frauds would bar any recovery of damages by Terminal Grain under Count II of its complaint.

We therefore affirm all of the judgments appealed from and order the assessment of costs accordingly.

All the Justices concur.

HANSON, Retired Justice, sitting for PORTER, J., disqualified.