DYAR vs. WALTON, WHANN & COMPANY.

1. Parol evidence (especially of the debtor himself) that a settlement closed up by absolute notes and mortgages was, by oral agreement of the parties, to be revised by the debtor, and the notes and mortgages reduced by crediting down all errors, contradicts the writings, and is inadmissible.

2. Making and violating a contemporaneous parol agreement inconsistent with the writings, is not a fraud for which equity will vary or set them aside, no sufficient reason appearing why such agreement was not incorporated in the writings.

3. Gross errors committed in a settlement not intended by the debtor to be final, but nevertheless consummated by executing notes and mortgages for definite amounts, bearing interest from date, with ten per cent. for attorneys' fees, will be attributed by a court of equity not to mistake, but to gross negligence. Where there is intention to be accurate hereafter but not now, failure in accuracy now is no disappointment of the intention, and therefore no mistake.

. December 19, 1887.

Evidence. Contracts. Fraud. Equity. Mistake. Negligence. Before Judge FAIN. Bartow Superior Court. January Term, 1887.

Reported in the decision.

M. R. STANSELL, for plaintiff in error.

R. B. TRIPPE; A. S. JOHNSON, for defendants.

BLECKLEY, Chief Justice.

Dyar, having been an agent for selling fertilizers on time for cotton, and for collecting the cotton when due and forwarding it to his principals, settled up with them on July 5th, 1882, gave his four notes under seal for the balance they claimed, aggregating $356.55, each note concluding with a mortgage upon realty as security for its payment; and the notes having matured, he resisted a

foreclosure of the mortgages, contending that the real balance against him was only $29.55.    The notes all bore interest from date, and promised ten per cent. additional for attorneys' fees.    Two of them were due and payable November 1st, 1882, and two on January 1st, 1883.    He set forth his defence by what he denominated an equitable plea, and sought to uphold it chiefly by his own testimony. He contended that he was unprepared for the settlement; that he was absent from home at his plantation, pressed with other business, and his books and papers were not at hand; that he was too unwell to make or examine the calculation; that the agent who represented the other party in making the settlement was urgent and pressing to close the matter up ; that said agent did not know how the account stood, save by the account which he had with him, and this did not embrace the particulars or details of the account, but was only a memorandum or partial statement, and that the agent said he would on returning to Atlanta, where his principals' books were, send to Dyar an itemized account, from which and from Dyar's books and papers the true balance might be ascertained, and if the notes and mortgages were for too much they should be credited down and stand only for the true debt; and that with this express understanding he, Dyar, went into the settlement, allowed the agent to make the calculation, trusted entirely to the calculation and to the agent's promise that errors should be corrected, and executed the paper accordingly.    He further alleged that the agent declined to leave with him the partial account or the calculation, and did not send the itemized account; and that he, Dyar, on examining his own books and papers soon afterwards, ascertained that errors had been committed by which the balance against him was raised from $29.55 to $356.55.    These errors consisted in not giving him credit for commissions, $150.00, in charging him with too much cotton, $39.00, and in charging him with uncollected notes payable in cot-

ton by purchasers of fertilizers, $138.00. These notes were discussed at the settlement, the agent saying that Dyar was liable for them. On the foregoing facts, he contended that the mortgages were the result of fraud, artifice and mistake, and prayed that they might be set aside as void, or credited down to his real indebtedness, and foreclosed for that sum only.

At the trial he was his own principal witness, and most of his testimony being excluded, the jury found against him. He moved for a new trial on more than twenty grounds, all of which were overruled. Numerous as they are, they are all rooted, at last, in the theory that though the account was closed by settlement, it is still open. The defence, when analyzed, resolves itself into an effort to vary a written contract by parol, and to shun the consequences of gross negligence. If at the time the notes and mortgages were given there was an agreement entered into, that they should be varied by the result of subsequent examination, that agreement ought to have been embodied in the written contract, or in some other writing whereby to establish it. The omission to do either is decisive of this branch of the defence. There is no allegation in the plea, and no indication in the evidence, that this agreement was intended to be embraced in any writing, or that it was left out by fraud or mistake. Its effect, if allowed to have any, would be to overrule the writings executed as the result of the settlement, and to reopen the settlement altogether.

*Sawyer vs. Vories,* 44 *Ga.* 662; *Cutts vs. Johnson,* 49 *Id.* 370; *Henderson vs. Thompson,* 52 *Id.* 149; *Howard & Soule vs. Stephens, Id.* 448; *Alston vs. Wingfield,* 53 *Id.* 18; *Rodgers vs. Rosser,* 57 *Id.* 319; *Wynn, Shannon & Co. vs. Cox,* 5 *Id.* 373 ; *Logan vs. Bond,* 13 *Id.* 192; *Wyche vs. Winship, Id.* 208; *Griswold vs. Scott, Id.* 210; *Gamble vs. Knott et al.,* 40 *Id.* 199 ; *Newell vs. Stiles,* 21 *Id.* 118; *Simmons vs. Martin,* 52 *Id.* 570 ; *Delaney vs.*

*Anderson*, 54 *Id.* 587 ; *Scaife vs. Beall*, 43 *Id.* 333 ; *Smith vs. Newton*, 59 *Id.* 113 ; *Mitchell vs. Insurance Co.* 54 *Id.* 289 ; *Sims vs. Crawford*, 56 *Id.* 31; *Haley vs. Evans*, 60 *Id.* 159.

.2. As a case of fraud, there is nothing to stand upon but the making and breaking of the parol agreement. No trick, art or device to entrap, deceive or mislead is shown.

3. On the subject of mistake, it is clear that anything like diligence would have guarded against it effectually. There was no effort or intention by Mr. Dyar to be accurate. He expected to be accurate afterwards, but not then. He relied on the parol agreement, and not on the pending settlement to reach a correct result. The only mistake he made was in treating the settlement as having no finality, though he signed and sealed its results. If he was too unwell to transact business, he knew it then as clearly as he afterwards knew it, and with such knowledge he ought to have abstained from making any settlement which he was unfit to make. He does not allege that he thought himself competent, but afterwards found out he was not. So, too, if his absence from home, his books and papers not being present, rendered it impracticable for him to make a settlement by which he was willing to abide, he ought not to have made any. What was the sense of going into a settlement and closing it up by notes and mortgages when he was not prepared to do so ? If he was unprepared, it was reckless disregard of his lack of preparation which brought about the result. He knew then the importance of his books and papers; their importance is not an after-discovered fact. It could not have been less plain to him then than it is now, that before going into a settlement upon matters involving the state of his books and papers, or on which they would throw light, was to act the part of a negligent and imprudent man. Courts do not attempt to guard men against their own rashness and folly, but will leave them as free agents to protect them-

selves. A settlement deliberately made, and closed up by solemn writings deliberately executed, is not a thing to be opened as matter of indulgence to gross negligence, though in consequence of such negligence one party obtained an advantage over the other. There was no artifice employed to draw Mr. Dyar into this settlement. And even if he trusted to the agent then representing the adverse party, as to some matters of law involved, he had no right to take his law from that source unless he was willing to abide by it, but ought to have obtained such advice as he needed, if he did need any, from sources better informed or more friendly to his interest. He cannot complain if the courts afford him no better justice than he administered to himself in a settlement voluntarily made. The very object of that settlement, if it had any object, was to fix upon a standard of justice. He gave his consent to that standard. He deliberately measured his liability in dollars and cents to the company he had been representing, and he signed and sealed the evidence which he must have known might be used as a guide to the courts in administering remedies against him to enforce his liability. *Pattison vs. Building & Loan Association*, 63 *Ga.* 373 ; *Bostwick vs. Duncan*, 60 *Ga.* 383.

We think there was no material error committed on the trial, and no error at all in denying a new trial. The head-notes shape accurately the points ruled, and are to be taken as a part of this opinion.

A fact of some importance is, that an account taken from the books of Walton, Whann & Co. was introduced by Dyar at the trial, which account showed the same balance in their favor as that for which the notes and mortgage were given.

Judgment affirmed.