## 61426. WHITE et al. v. FIRST FEDERAL SAVINGS & LOAN ASSOCIATION OF ATLANTA.

DEEN, Presiding Judge.

The appellant purchased a trailer from Buddy's Trailer Sales of Albany, Inc., and in February, 1976, signed purchase and installment contract agreements. Buddy's transferred the installment contract to First Federal which took subject to all equities between the original parties. The trailer had been specially prepared for the appellant by incorporating in the building plan a number of changes, such as closet size and door locations, ordered by White and his wife. The parties moved in but complained of numerous errors in the construction. In October, 1976, the appellant was adjudicated a bankrupt in a Florida proceeding. The following February he entered into an agreement with the bank "in consideration of the agreement of the holder of the contract to allow the purchaser to retain possession and title to the mobile home subject to all the terms and conditions" of the installment contract and for other considerations. The appellant agreed to assume all obligations undertaken in the installment contract and abide by all its terms.

The appellant and his wife remained in the trailer. In August, 1978, the floors in three of the rooms suddenly buckled badly, leaving elevation differences as great as an inch in ridges running three or four feet in length and as close as 16 inches apart. The appellant ceased payment on the installment notes and the savings and loan association brought this action. White joined his seller, Buddy's Trailer Sales, as a third party defendant. From directed verdicts in favor of the plaintiff and Buddy's, White appeals.

1. Even though the trailer was purchased new and modified to meet White's specifications, the installment contract contained on its reverse side in the fifth of seven paragraphs in small print designated "Statements of Additional Covenants" an "as is" condition purporting to wipe out all warranties, express and implied. If this covenant is effective against the defendant it of course disposes of the case in the plaintiff's favor by inhibiting any implied warranty of merchantability or fitness as against latent defects of the structure. Exclusions of implied warranties of fitness or merchantability to be effective are required to be by writing and conspicuous. Code § 109A-2—316 (2). Notwithstanding this subsection however Code § 109A-2—316 (3) (a) provides that, unless circumstances indicate otherwise "as is" language "makes plain that there is no implied warranty." To hold that the "as is" language need not be conspicuous would allow the implied warranties of fitness and merchantability to be annulled by implication by language less conspicuous than if they

were directly eliminated, in which case the effort to eliminate them would have failed. *Chrysler Corp. v. Wilson Plumbing Co.,* 132 Ga. App. 435 (2) (208 SE2d 321) (1974). The requirement that disclaimer terms must be conspicuous to be effective follows the main current of interpretation of Code § 109A-2—316 (3a). See Woodruff v. Clark County Farm Bureau Coop. Assn., 286 NE2d 188; Osborne v. Genevie, 14 UCC Rep. 85 (1974); Richards v. Goerg Boat & Motors, Inc., 25 UCC Rep. 1002 (1979); Fairchild Industries v. Maritime Air Service Ltd., 16 UCC Rep. 663 (1975); Gindy Mfg. Corp. v. Cardinale Trucking Corp., 7 UCC Rep. 1257 (1970).

2. As to those elements of the defendant's claim of which he was aware at the time the mobile home was accepted and occupied, which Buddy's agreed to correct and which it is urged were never properly remedied, the reassumption agreement with the bank given for the consideration of reinstating the contract must, as between the bank and White, constitute a waiver of the latter's claims of lack of consideration, he having agreed therein to reassume all obligations undertaken by the installment contract and to abide by all its terms. The general rule is that where there is a breach of contract of which the opposite party is cognizant, and that party after the discovery of the breach (here both the original failures and the failure to live up to any promises to repair during the two and a half year period) reaffirms the original contract without giving any notice of his intention to rely on its exact terms, he has waived his right to recover for such failure to perform. *Eaves v. Georgian Co.,* 47 Ga. App. 37 (3) (169 SE 519) (1933); *Hardy v. Sparks,* 24 Ga. App. 468 (4) (101 SE 399).

3. However, as to the main complaint, the buckling of the floors which allegedly rendered the structure uninhabitable, this did not occur until after the resumption contract and no such waiver occurred. On this point the trial court erred in directing a verdict for the plaintiff as a jury question remained on whether adequate repairs had been tendered. We do not agree that the proof offered at trial failed because it did not offer proof of industry standards as to floors in mobile homes. It is common knowledge that floors are to be walked on and that to be suitable for this purpose they must be reasonably flat and level. The testimony established that the buckling was caused by a failure to properly seal the particle board underlying the floor tiles. The resulting unevenness according to the testimony rendered it completely unserviceable as a bedroom or bathroom floor which would be used among other things by the residents at night with bare feet. This was quite sufficient to make a jury question as to failure of consideration on this item. "Where the facts upon which the rights of parties depend are within common experience and knowledge, the

courts will take judicial cognizance of them." *Mutual Life Ins. Co. v. Davis,* 79 Ga. App. 336 (1) (53 SE2d 571) (1949).

It is also contended that a verdict was properly directed because there was no proof of damages. One witness testified in detail as to what repairs should have been made and that they would cost between $300 and $500. Differences in value (the classic method of determining damages for improper or negligent construction) may be shown by evidence of the reasonable cost of correcting a defect. *Windsor Forest, Inc. v. Rocker,* 115 Ga. App. 317, 322 (154 SE2d 627) (1967). While the amount testified to as the cost of repairs should have been specific, in view of the particularity with which the condition of the flooring and the work necessary to correct it was testified to the jury could have found an amount between the sums stated and failure to be more specific would not in and of itself be ground for directing a verdict on the theory that there was no evidence from which the amount of damage could be ascertained. It was error to hold that no defense had been established as to breach of warranty or failure of consideration.

4. The trial court properly held that no right of action based on conspiracy or fraud had been established. *McClelland v. Westview Cemetery,* 148 Ga. App. 447, 451 (251 SE2d 351) (1978).

5. The defendant further attempted by amendment to add a late counterclaim alleging violation of the provisions of the Fair Business Practices Act (Code § 106-1201 et seq.) We find no abuse of discretion in denying the motion to amend. The court properly found that the notice provisions of Code § 106-1210 (b) of the Act were not complied with, and there was no explanation of an untimely filing under Code § 81A-113 (f) except an allegation that the count was omitted by inadvertence. The complaint was filed in November, 1978 and the case tried in March, 1980. This particular amendment was offered toward the end of December, 1979, it appears to have been an afterthought, and there was no allegation that the interests of justice demanded its inclusion. We accordingly find no abuse of discretion.

For the reasons stated in the third division of the opinion it was error to direct general verdicts in favor of the plaintiff and third party defendant.

*Judgment reversed. Banke and Carley, JJ., concur.*

Decided April 24, 1981 —

*E. Penn Nicholson, W. Franklin Freeman, Jr., Kim H. Roeder,* for appellants.

*Albert B. Wallace,* for appellee.