## 69688. GEORGIA INTERNATIONAL LIFE INSURANCE COMPANY v. HUCKABEE et al.

### (333 SE2d 618)

BEASLEY, Judge.

Appellee Leo Huckabee, Jr., owned three automobile dealerships in the Macon, Georgia, area. In 1977 appellees Leo Huckabee III, Bobby Ray Corbett, and James R. Clance, all officials of the dealerships, entered into credit life insurance agency agreements with appellant Georgia International Life Insurance Co. (Georgia International).[1] Appellees' compensation for each policy sold was to consist of two parts: under the "Agency Agreement," "a commission of 40% of the gross premiums . . . , less any return premiums . . . on insurance effected with the Company by the Agent under this Agreement"; and, additionally, under an "Amendment to Agency Agreement" of even date with the agency agreement, a "contingent commission" calculated on the basis of claims filed under the policies sold by Huckabee, this to be paid at a future date, after the policies had "matured." The Agency Agreement contained the following provision: "10. Either party hereto shall have the right to terminate this agreement upon thirty days notice in writing." The "amendment" also contained, *inter alia*, the following provisions: "1. (b) It is understood and agreed that, as a condition precedent to the payment of the contingent commissions, the minimum annual net written premium shall be at least $12,000 . . . ," and "2. Upon termination of this agreement by either party for whatever reason, no further contingent commission shall be payable."

Some time after execution of the above documents, Huckabee, in the hope of earning a larger return on its credit insurance business, conducted negotiations aimed at formation of a "captive" insurance company through which all but a small portion of its policies would be written. Thereafter, net premiums for policies written on Georgia International decreased appreciably. Nevertheless, according to appellees, 1979 premiums for policies written on Georgia International amounted to far more than the $12,000 minimum required by the amendment to the 1977 agency agreement under which they were operating. On October 31, 1979, however, Georgia International notified Huckabee that, because of the sharp decline in the number of policies written, the agreement would be terminated as of November 30.

The following spring Leo Huckabee III entered into negotiations with Georgia International to resume the agency relationship. A November 18, 1980, letter to Huckabee III from Howard DuBois, the

---

[1] Although appellant insurer kept separate records for each of the Huckabee dealerships, the records were combined for the purpose of computing moneys owed. Appellees will hereinafter be collectively referred to as "Huckabee."

Georgia International vice-president in charge of that area of the business, includes the following: "[Y]our new accounts will receive a 40% soliciting commission . . . These accounts will be allowed to share in additional commissions in the form of a contingent commission once the premiums have been earned . . . In order to qualify for a contingent commission, you will have to produce a minimum annual premium of $240,000 . . . Also, it is understood that, in the event of the termination of the agreement by either party for whatever reason, no further contingent commissions shall be payable . . . In the event that Huckabee Auto . . . meets the requirements outlined . . . , at December 1, 1981, we will combine the experience from the new accounts with your old accounts. At this time, it must be understood that the old accounts are terminated and there are no additional commissions due. We will only combine the old experience if all conditions are met under the new contract."

The new contract, or "agency agreement," dated April 1, 1980 (but, according to appellees, not actually executed until some time after May 28, 1980), was identical with that of 1977. The "Amendment to Agency Agreement" signed at the same time differed in several particulars from that of 1977; the only dissimilar or additional provisions relevant to the case are the following: "1. . . . It is understood and agreed that, as a condition precedent to the payment of a contingent commission for a specified calendar year, there must have been a minimum net written premium (written premium less cancellations) . . . of at least $240,000 . . . ," and "3. Either party hereto shall have the right to terminate this Amendment upon thirty days notice in writing to the other party. Upon termination of this Amendment by either party for whatever reason, no further contingent commission shall be payable."

On March 4, 1981, DuBois wrote to Huckabee stating that, because the latter's "level of production is insufficient for us to continue as your insurer," the agency agreement would be terminated as of April 6, 1981. The letter continued: "This termination also includes any and all agreements associated with the anticipated merger of these accounts with your previous accounts . . . ; . . . conditions for the merger having not been attained." Appellees contend that because the termination occurred long before the first designated accounting period (December 1, 1981, as stated in DuBois' letter of November 18, 1980) and only a few months after execution of the new agreements, the termination was effected for the sole purpose of fraudulently depriving them of contingent commissions that allegedly were or would have been due them.

According to appellees, at no time before or after the termination of the 1980 agreements did Georgia International demand an accounting or allude to any existing indebtedness. Appellees contend that,

contrary to appellant's assertions, the agent and the insurer each received 40% of the gross premiums and that, upon maturity of the individual policies (usually three to five years), the actual source of contingent commissions paid would be the remaining 20% of the gross premiums.

In June 1983 appellees brought an action in five counts, seeking recovery of contingent commissions amounting to more than $270,000 under the 1977 agreements. They alleged that this amount was owing under theories of breach of contract, wrongful withholding, quantum meruit, fraud, and lack of mutuality. They sought, in addition to the principal sum, interest, exemplary damages, and "additional damages in the amount of $1,000,000."

Georgia International answered, denying liability and counterclaiming for $4,251.71 in unearned premiums on cancelled policies. Huckabee filed responsive pleadings denying liability on the counterclaim. Georgia International then filed a motion for summary judgment or, in the alternative, for dismissal on the ground that Huckabee had failed to join a necessary party, General Motors Acceptance Corporation (GMAC), Huckabee's assignee. The trial court denied the motion to dismiss on the basis that the assignment to GMAC was, in contemplation of law, only a partial assignment and that Huckabee therefore retained legal title and was the proper party plaintiff. The court entered a second order denying summary judgment, on the ground that "[i]t appears to this court . . . that one or more material issues of fact do still remain in dispute. . . ."

Appellant obtained a certificate of appealability of the latter order and enumerates five errors, to wit: first, that any claim for contingent commissions is barred by the language of the contracts; second, that a claim for contingent commissions is further barred by accord and satisfaction; third, that there are no material facts in dispute; fourth, that the commissions sought are not recoverable under the theories of quantum meruit, fraud, or lack of mutuality; and, fifth, that Georgia International is entitled to recovery on its counterclaim because appellees allegedly raised no defense thereto. *Held*:

On a motion for summary judgment under OCGA § 9-11-56 the party opposing the motion is to be given the benefit of all reasonable doubts and all favorable inferences that may be drawn from the evidence. *Eiberger v. West*, 247 Ga. 767 (281 SE2d 148) (1981). This is so even when, as in the instant case, the movant is the party on whom the burden of proof at trial does not lie: all the evidence must be construed against the movant and in favor of the party opposing the motion — here, plaintiff-appellees. *Pugh v. Frank Jackson Lincoln-Mercury*, 165 Ga. App. 292 (300 SE2d 227) (1983). The requirements of this section must be strictly followed by the trial court when considering a motion for summary judgment. *Southeastern Metal Prods.*

*v. Horger*, 166 Ga. App. 205 (303 SE2d 536) (1983). Having set the scene, let us look at the facts.

This case involves construction of contracts. They are clear and unambiguous. The evidence shows without dispute that the additional contingent commissions, if any accrued and were not paid before the first contracts were terminated, were relinquished by the agents when they entered new contracts in 1980. The new contracts expressly provided that "no additional commissions" are due on the accounts created under the old contracts. Thus, in consideration of re-establishing the relationship, and thereby the opportunity to earn commissions, the agents agreed to forego any claims they might have had to additional commissions under the old contracts, the ones they now sue on.

The insurance company, however, was willing to revive those old accounts for the purpose of paying additional contingent commissions, *if*, on December 31, 1981, business was up to par. It was not, so prior to that date the company terminated the relationship. Thus the re-institution of the right to additional commissions never occurred because the condition precedent never materialized.

As in the old agreement, so also in the new, either party had a right to end the relationship at any time, with specified notice. There was no lack of mutuality. Termination by the agents would cut off a pipeline to business for the company; termination by the company would cut off an opportunity to earn commissions for the agents. Due to the small amount of business engendered by the agents, the company discontinued the agency, as it had done when business dropped off sharply in 1979. The company thus merely exercised its right to terminate, as had been agreed to in all of the contracts between the parties and which provision had never been complained about until after the *second* termination. Even then it was not challenged until the agents sought to collect additional contingent commissions under the old contract, at which point the termination provision was made an issue.

The contract provisions being clear and unambiguous, their application is compelled. *Great American Ins. Co. v. Lipe*, 116 Ga. App. 169, 174 (6) (156 SE2d 490) (1967). That being the case, and plaintiffs having sued on a contract which has been proved, there can be no claim for quantum meruit. *Stowers v. Hall*, 159 Ga. App. 501 (1) (283 SE2d 714) (1981). The agreement of the parties, and not the legal principle of giving value for services rendered in the absence of an agreement, controls.

With regard to the averments of fraud in count five, it was incumbent upon the plaintiffs to offer specific allegations to substantiate their claim. *Continental Invest. Corp. v. Cherry*, 124 Ga. App. 863 (2) (186 SE2d 301) (1971). Where either party may terminate a con-

tract at will, "one who merely exercises his legal rights is not thereby chargeable with fraud." *Repsold v. N. Y. Life Ins. Co.*, 216 F2d 479, 486 (1954). See, e.g., this court's cases treating inceptive fraud involving employment contracts terminable at will: *American Standard v. Jessee*, 150 Ga. App. 663, 665 (2) (258 SE2d 240) (1979); *Phillips v. Liberty T. V. Cable*, 166 Ga. App. 411 (304 SE2d 516) (1983). Plaintiffs' assertions of fraud were not sustainable as a matter of law and were subject to defendant's motion for summary judgment.

Defendant-appellant is also entitled to summary judgment on the counterclaim for return of unearned commissions. Plaintiffs have offered no legal defense to it. They have not disputed the amount. They say only that when the company terminated the agency, any rights to recover unearned commissions ceased. They offer no authority. The correct view is as stated in 4 Couch on Ins. 2d, § 26A:223 at p. 426: "If an agent has received or retained the portion of the premium to which he would be entitled if the policy were not canceled, he must, upon its cancellation, return or refund the unearned portion thereof. . . . Agency contracts commonly specify the duty of the agent to return commissions on unearned premiums upon cancellation. . . . If an agent retains commissions on canceled policies, he is liable therefor, where the contract provides for a return of commissions in such case, *and this applies whether the cancellation was prior or subsequent to termination of the agency.*"

Based on the foregoing, summary judgment was called for.

*Judgment reversed. McMurray, P. J., Birdsong, P. J., Carley and Sognier, JJ., concur. Banke, C. J., Deen, P. J., Pope and Benham, JJ., dissent.*

DEEN, Presiding Judge, dissenting.

The evidence in this case does not, under any legal theory, mandate a judgment for appellant as a matter of law. The record clearly indicates the presence of disputed issues of material fact which require presentation at trial and submission to a jury. Moreover, the jury, after proper instruction in applicable law, will need to assess the evidence as it pertains to the parties' claims of, on the one hand, an alleged accord and satisfaction and allegedly unambiguous contractual language favoring the draftsman-appellant and, on the other hand, alleged fraud and lack of mutuality as they bear upon the validity *vel non* of the contract as it was drafted by appellant and understood by both parties. See *Venable v. Block*, 138 Ga. App. 215, 217 (225 SE2d 755) (1976); *Mutual Benefit Health &c. Assn. v. LeMaster*, 89 Ga. App. 870 (81 SE2d 484) (1954); cf. *Newport Timber Corp. v. Floyd*, 247 Ga. 535, 540 (277 SE2d 646) (1981). The status of the counterclaim likewise requires examination by a jury.

The case at bar is clearly not one for which summary adjudica-

tion is appropriate. For the foregoing reasons, we respectfully dissent.

I am authorized to state that Chief Judge Banke, Judge Pope, and Judge Benham join in this dissent.

DECIDED MAY 22, 1985 —
REHEARING DENIED JULY 9, 1985 —

*George B. Haley, Deborrah Sutter Heller*, for appellant.
*James D. Stokes*, for appellees.