72463. JACOBSEN v. MULLER et al.
(352 SE2d 604)

BEASLEY, Judge.

Appellant Jacobsen's employment with a North Carolina business was terminated in January 1983. At that time, appellee Drake Beam Morin, Inc. (DBM) orally contracted with appellant's former employer to assist it with respect to the termination of appellant's employment, including providing appellant with job counseling services at the DBM Atlanta office. Appellant made several trips to the DBM Atlanta office, where she was assigned appellee Muller, a psychologist, as a job counselor. Thereafter, an intimate, personal relationship developed between appellant and appellee Muller. After the termination of the relationship, appellant brought suit against DBM and Muller, seeking compensatory and punitive damages for an alleged breach of contract and malpractice as a psychologist. This appeal follows the grant of summary judgment to both appellees.

1. Appellees' motion to dismiss the appeal is denied.

2. Citing OCGA § 9-11-56 (c) and *Premium Distrib. Co. v. Nat. Distrib. Co.*, 157 Ga. App. 666 (278 SE2d 468) (1981), appellant contends the trial court committed reversible error by allegedly granting the motions for summary judgment without providing appellant with an oral hearing or prior notice of the date of ruling.

Appellees' motions, made on July 19, 1985, and granted on September 3, 1985, were decided under the procedural auspices of the Uniform Superior Court Rules (Rules). Under the new Rules, a party opposing a motion has 30 days after service of the motion to file a response (Rule 6.2), and a motion will be decided without benefit of an oral hearing unless a written request is made therefor (Rule 6.3). Contrary to appellant's assertions, the Rules do not deprive the op-

posing party of the opportunity to be heard, since he is given 30 days after service of the motion in which to file a response to the motion. A respondent is "heard" when he files a response, since "hearing" does not necessitate an oral hearing but "contemplates notice to the respondent that the matter will be heard and taken under advisement as of a certain day." *Ferguson v. Miller*, 160 Ga. App. 436, 437 (287 SE2d 363) (1981). Thus, appellant was given an opportunity to be heard and chose not to avail herself of that opportunity. If she had wished to present oral argument, she need only have made a written request therefor and it would have been permitted. Rule 6.3; *Spikes v. Citizens State Bank*, 179 Ga. App. 479 (347 SE2d 310) (1986). The Rules also put to rest appellant's allegation that she received no prior notice of the date of ruling on the motions for summary judgment. Under the Rules, service of a motion on an opposing party serves as notice to that party that the court will take the matter under advisement after 30 days (the time during which the opposing party may file a response to the motion) after service of the motion has passed.

3. Appellant next contends that summary judgment for appellees was inappropriate because appellees' motions were "defective." Attached as exhibits to DBM's motion, adopted by Muller, were excerpts from three depositions of appellant, as well as DBM's interrogatories to appellant and her responses thereto. Appellant maintains that the trial court's consideration of the uncertified photocopies of the excerpts and pleadings was improper because the discovery material was not filed. We disagree.

"Depositions and other discovery material otherwise required to be filed with the court under this chapter shall not be required to be so filed unless: . . . (5) Such material . . . is necessary to a pretrial . . . motion and said material has not previously been filed under some other provision of this chapter, in which event *the portions to be used* shall be filed with the clerk of the court . . . at the filing of the motion . . ." OCGA § 9-11-29.1 (a) (5). (Emphasis supplied.) Thus, filing those portions of discovery material necessary to the motions for summary judgment was not error. Nor was it error that the excerpts so filed were not certified copies. OCGA § 9-11-29.1 (a) (5) does not make certification a prerequisite to the use of discovery material in support of a motion. Rather, it is OCGA § 9-11-56 (e) which requires sworn or certified copies of all papers or parts thereof *referred to in an affidavit* filed in support of or in opposition to a motion for summary judgment. *Jones v. Rodzewicz*, 165 Ga. App. 635 (302 SE2d 402) (1983), and *Bush v. Legum*, 176 Ga. App. 395 (336 SE2d 284) (1985), cited by appellant, are not applicable to the case before us since they are concerned with material referred to in affidavits filed in support of or against a motion for summary judgment.

4. Appellant also argues that the grant of summary judgment to

appellees was improper.

On motion for summary judgment, the burden is on the movant, regardless of which party would have the burden of proof at trial, to show there is no genuine issue of material fact. All evidence is to be construed most strongly against the movant, and the party opposing the motion is given the benefit of all reasonable doubts and all favorable inferences that can be drawn from the evidence. *Fiumefreddo v. Scudder*, 252 Ga. 279, 282 (313 SE2d 683) (1984). See also *Ga. Intl. Life Ins. Co. v. Huckabee*, 175 Ga. App. 343, 345 (333 SE2d 618) (1985). On motion for summary judgment, the movant must negate every theory of recovery which the non-moving party might have. *Reid v. Reid*, 246 Ga. 592 (2) (272 SE2d 685) (1980).

We are of the opinion that summary judgment was warranted for the reason that plaintiff condoned the breach of contract, if any, and assumed the risk of the tort, if any, committed when Muller deviated from accepted professional standards of a job counselor and used the professional relationship to create and foster an illicit personal relationship with the client.

The allegations of the complaint were not at issue as such, because plaintiff's contentions were somewhat altered in the pretrial order. It superseded the pleadings and "constitute[d] the only issues to be tried in this case." Therefore it, rather than the complaint, controls the nature of the action. OCGA § 9-11-16 (b); *Gaul v. Kennedy*, 246 Ga. 290, 291 (1) (271 SE2d 196) (1980).

Plaintiff did not contend medical malpractice but rather professional malpractice. Defendants' evidence shows that the service contracted for was job counseling to terminated employees. This includes interviewing, vocational testing, feedback for discussion of testing results, assistance in focusing upon career objectives and identifying "the ideal job" for the client, and advice on the client's marketing himself or herself as a prospective employee. A psychologist is employed by DBM to review the vocational guidance tests, and in this case it was Muller, who also served as the job counselor in the numerous sessions which were provided for the job counseling. He was a licensed clinical psychologist, and it is clear from those portions of plaintiff's depositions which are in the record, together with her answers to interrogatories and the other evidence submitted, that Muller used psychology techniques, methods, tests, and theories in the job counseling process. That is, there is at least some evidence that he practiced applied psychology, in the sense recognized in OCGA § 43-39-1 (2), in providing the extensive job counseling service in this case.

There is also some evidence that Muller misused the professional role and the professional relationship to manufacture a personal role and to develop a personal relationship. The interview questions and

the advice and assistance given, as testified to, in effect commingled both to some degree.

However, there is no disputing the fact that plaintiff knew that the personal relationship which was fostered was beyond the scope of Muller's duties as a job counselor, and yet she responded positively. She condoned whatever legal breaches were committed and participated up to the time that he rejected her. She does not contend that she was led to believe that the personal relationship was a necessary ingredient of the job counseling. In fact, she never told anyone at the DBM office about it, and she testified that "John was very concerned that no one find out."

Consequently, she has no cause to complain, either for breach of contract insofar as the job counseling service is concerned, *Eaves v. Georgian Co.*, 47 Ga. App. 37, 38 (4) (169 SE 519) (1933); *White v. First Fed. S & L Assn.*, 158 Ga. App. 373, 374 (2) (280 SE2d 398) (1981), or for a tort of professional malpractice. *Myers v. Boleman*, 151 Ga. App. 506, 509 (3) (260 SE2d 359) (1979); *Southland Butane Gas Co. v. Blackwell*, 211 Ga. 665, 668 (88 SE2d 6) (1955).

*Judgment affirmed. Banke, C. J., Deen, P. J., Birdsong, P. J., Sognier, and Pope, JJ., concur. McMurray, P. J., and Carley, J., concur in judgment only. Deen, P. J., also concurs specially. Benham, J., concurs in part and dissents in part.*

DEEN, Presiding Judge, concurring specially.

While concurring fully with the majority opinion as far as it goes, I also concur specially to offer some additional observations concerning the propriety of granting summary judgment for the appellees.

In *St. Paul Fire &c. Ins. Co. v. Mitchell*, 164 Ga. App. 215 (296 SE2d 126) (1982), a medical malpractice insurer sought declaratory judgment that it had no duty to defend an action commenced by a woman who had sought treatment for sexual frigidity and who, in turn, (1) fell prey to the treating psychiatrist's mishandling of the controversial Freudian[1] "transference phenomenon," (2) had sexual relations with the psychiatrist, and (3) consequently had a baby. This court held that the insurer did have the duty to defend because the plaintiff's allegations asserted a valid claim, fit for jury resolution, for tortious rendition of professional services.

In the instant case, although the appellees maintain that Muller, despite being a licensed clinical psychologist, was nothing more than a career counselor, the appellant's deposition testimony sufficed to

---

[1] "A new secular and scientific religion for an elite which was to guide mankind . . . I have tried to show that psychoanalysis was conceived as, and developed further into, a quasi-religious movement based on psychological theory and implemented by psychotherapy." Fromm, Erich. *Sigmund Freud's Mission, An Analysis of His Personality and Influence.*

demonstrate that Muller's professed job duties on paper were not those he put in practice. According to the appellant, Muller explained that he would assist her in analyzing and assessing her assets and ascertaining job and career direction by concentrating on her psychological make-up. Muller emphasized their confidential, trust relationship, and encouraged her not to hold anything back as he proceeded to inquire into every little detail of her life, in particular any "life-influencing" and traumatic experiences. The appellant also recounted Muller's intimation that he desired his own psychological counseling practice, but that his employment at DBM was the next best thing because he at least was able to practice his profession. This evidence would seem to preclude any finding as a matter of law that no therapist-patient relationship existed.

Nevertheless, even if a psychological therapist-patient relationship did exist, it appears that liability for malpractice could follow only if it were shown that this fiduciary relationship was exploited by (1) so gaining the trust and confidence of the patient as to deprive her of her free will[2] (see OCGA § 16-2-4), and (2) the sexual intimacy is connected with the plan of treatment. That was the situation in *St. Paul*, but not the instant case. Reviewing the evidence in the light most favorable to the appellant, it is still obvious that her unhappy personal relationship with Muller was in no way connected with either his "career counseling" or his "therapy." Accordingly, summary judgment for the appellees was appropriate.

Notwithstanding the reprehensible nature of Muller's role in this human drama, to allow the appellant to recover under the facts of this case would in effect have this court endorse a quixotic view that the virtue of women must be defended whether it exists or not. It should be remembered that "[c]ourts do not attempt to guard men against their own rashness and folly, but will leave them as free agents to protect themselves." *Dyar v. Walton, Whann & Co.*, 79 Ga. 466, 469-470 (1887). The latter stated principle applies to women as well as men, and one coming into court seeking equitable protection and satisfaction must do so with clean hands.[3]

Anything to the contrary held in *Long v. Adams*, 175 Ga. App. 538 (333 SE2d 852) (1985), should be overruled by this court. Initially

---

[2] Had the facts in this case been stronger toward designing a plan of treatment to improve her social, sexual, and personal life instead of limited to job counseling services, and had she been subsequently sexually subdued, jury issues would exist as to whether her free will was submerged, surrendered, and subordinated to his so that she was putty in his hands and the acts his by professionally overpowering her free will to resist.

[3] The acts apparently consented to by the two adults here, under choices made by their own free will, amount to at least criminal fornication, and possible criminal adultery, as well as improper professional conduct by the counselor-therapist who was being paid for services rendered.

in the instant case, the objectives of providing job and career direction were both honorable and legal, although an illegal act of promiscuity and criminal fornication resulted, with this court providing no remedy or relief to the victim. A fortiori, where the original goals as in *Long* are promiscuity and the rashness and folly of fooling around with criminal fornication, and where herpes, syphillis, gonorrhea, or AIDS might result, parties assume the risks of their own indiscretion of walking in the dark. The courts must recognize these parties as "free agents to protect themselves," and leave them where we find them without remedy or relief in their rashness and ruin. *Long* should hereby be disapproved and overruled, as it would be unconscionable to withhold aid to the initially innocent in the instant case, yet reward the initially promiscuous in *Long*.

The dissent disparages this writer's position as (1) applying "turn-of-the century industrial revolution principles to the realities of the present world," and (2) as canonizing a "laissez-faire approach to justice." Regarding that observation, it is only suggested that more frequent modern application of some vintage principles might render the "realities of the present world" less bleak. Age does not necessarily translate into obsolescence. Further, the only laissez-faire approach to anything in this case appears to be that by the dissent, with regard to possibly canonizing social mores and morals. This writer's position more accurately would be compared to the doctrine of caveat emptor. Even applying negligence principles, this is a plain and palpable case of at least equal negligence.

BENHAM, Judge, concurring in part and dissenting in part.

While I concur fully with the majority in Divisions 1, 2, and 3, I cannot agree that the grant of summary judgment to appellees was appropriate.

On motion for summary judgment, the burden is on the movant, regardless of which party would have the burden of proof at trial, to show there is no genuine issue of material fact. All evidence is to be construed most strongly against the movant, and the party opposing the motion is given the benefit of all reasonable doubts and all favorable inferences that can be drawn from the evidence. *Fiumefreddo v. Scudder*, 252 Ga. 279, 282 (313 SE2d 683) (1984). See also *Ga. Intl. Life Ins. Co. v. Huckabee*, 175 Ga. App. 343, 345 (333 SE2d 618) (1985). On motion for summary judgment, the movant must negate every theory of recovery which the non-moving party might have. *Reid v. Reid*, 246 Ga. 592 (2) (272 SE2d 685) (1980).

Appellant's contentions, as contained in the pre-trial order (see OCGA § 9-11-16 (b)), were: appellees had breached their contractual and fiduciary obligations by totally failing to assist appellant in obtaining employment, and had failed to provide her with proper psy-

chological counseling services and testing; appellees had negligently failed to provide appellant with psychological counseling and had failed so outrageously to comply with generally accepted standards for providing psychological care that appellant was entitled to exemplary damages; and appellee Muller, while acting within the scope of his DBM employment and in his professional capacity as a psychologist, had committed professional malpractice by entering into a sexual relationship with appellant. The majority addresses only the last allegation, failing altogether to address appellant's breach of contract claims.

Appellant's breach of contract claims are necessarily based upon the existence of contractual obligations on DBM's part to provide appellant with assistance in obtaining employment and to provide her with psychological services. Through its oral contract with appellant's former employer, DBM offered appellant job counseling services which consisted of vocational testing, efforts to identify a career objective, and advice and instruction to aid in marketing one's self. DBM has not presented any evidence by which it negates appellant's assertion that DBM had failed to live up to its contractual duty to aid appellant in finding employment. Thus, it appears that a question remains whether DBM breached its contract to provide job counseling services to appellant, and summary judgment on this issue was inappropriately granted.

A similar analysis applies to appellant's contention that appellees breached a contractual duty to provide psychological services to her. By means of an uncontroverted affidavit, the officer who on behalf of DBM contracted with appellant's former employer to provide appellant job counseling services stated that no medical services, including psychological diagnosis, care, or treatment, were requested, offered, or contracted. However, a vice-president of DBM executed an affidavit in which he acknowledged that DBM employed a psychologist, in this case appellee Muller, "for the sole purpose of reviewing vocational guidance tests in the event that a client chose to take such tests." Thus, a very limited psychological service was offered appellant within the scope of the job counseling she was receiving. If appellant can establish that DBM, acting through its employee Muller, improperly reviewed or failed to review her vocational guidance test results, she may be able to establish a breach of contract involving the limited psychological service to which she was entitled under the contract to provide job counseling. Again, no evidence negating appellant's assertion is contained in the record. Therefore, summary judgment on appellant's breach of contract claim was inappropriate.

Appellant next contends that appellees negligently failed to provide her with psychological counseling and so outrageously failed to comply with generally accepted standards for providing psychological

care as to entitle her to exemplary damages. Again, I am restricting the scope of appellant's allegation to the limited area of psychological aid provided by appellees pursuant to the job counseling contract, that is, Muller's expertise as a psychologist used solely to review vocational guidance tests appellant may have taken. There is no evidence in the record to refute appellant's allegation that appellees did not provide the limited psychological service of test review. Furthermore, there is no evidence refuting her assertion that failure to provide the limited psychological service within the job counseling service is a breach of the generally accepted standard for providing psychological care. I again reach the conclusion that summary judgment for appellees was inappropriate on the issue of negligent failure to provide appellant with the limited psychological service to which she was entitled, as well as on the issue of whether failure to provide the service was a breach of the generally accepted standard for providing psychological care.

Appellant's final contention is that appellee Muller, while acting within the scope of his employment with DBM and in his professional capacity as a psychologist "abused his position of power and trust" and entered into a sexual relationship with appellant, thereby committing professional malpractice. The affidavit of DBM's vice-president establishes that Muller was used as a psychologist in one aspect of DBM's contractual relationship with appellant, i.e., as a reviewer of vocational guidance tests. Therefore, a professional relationship between Muller as a psychologist (albeit in a very limited role) and appellant existed. While both DBM and Muller argue that the diagnosis or treatment of psychological problems of any of DBM's clients was not offered by DBM and Muller was not authorized to perform any such service, I am not focusing on the diagnostic and treatment roles of a psychologist. I am only looking at the role which DBM has admitted a psychologist plays in its job counseling service. The record does not contain any evidence negating the allegation that Muller engaged in a sexual relationship with appellant within his limited role as a psychologist in the employ of DBM. The record contains no refutation of the allegation that a sexual relationship with a DBM client whose vocational guidance test results were reviewed by Muller, acting as a psychologist, was within the parameters of Muller's employ. In the absence of appellees' negation of appellant's allegations, and in light of the fact that Muller played a role, though limited, as a psychologist vis-a-vis appellant, summary judgment for appellees was not warranted.

Both the majority opinion and the special concurrence recognize that appellee Muller had a professional relationship as a psychologist with appellant. The majority concludes, however, that summary judgment for appellees was proper because: (1) it was undisputed that ap-

pellant knew the personal relationship was beyond the scope of Muller's duties as a job counselor; (2) appellant responded positively to Muller's advances; and (3) appellant did not contend she was led to believe that the personal relationship was a necessary ingredient of the job counseling. I disagree. In the first place, the fact that appellant believed Muller did not want anyone in his office to know about their relationship does not mandate the conclusion that appellant knew the relationship was beyond the scope of Muller's professional duties. It must be remembered that appellant, as the party opposing summary judgment, is entitled to the benefit of all reasonable doubts and all favorable inferences that can be drawn from the evidence. *Fiumefreddo v. Scudder*, supra. Secondly, if by positively responding to Muller's advances appellant "assumed the risk," thereby precluding recovery on her part, then no person engaged in sexual activity with a person with whom he/she has a doctor-patient relationship is entitled to recover. However, that cannot be, since, in *St. Paul Fire &c. Ins. Co. v. Mitchell*, 164 Ga. App. 215 (296 SE2d 126) (1982), we recognized, without declaring that the patient had assumed the risk, the ability of a patient to bring suit against her physician with whom she had engaged in a sexual relationship.

Finally, I cannot agree with the majority's conclusion that appellant does not contend she was led to believe that the personal relationship was a necessary ingredient of the job counseling. Appellant, in the pre-trial order, alleged that appellant Muller, while acting within the scope of his DBM employment and in his professional capacity as a psychologist, had committed professional malpractice by entering into a sexual relationship with her. Since appellees moved for summary judgment they had the burden of affirmatively negating appellant's allegation that malpractice occurred when Muller, acting as a psychologist within the confines of his DBM employment, committed malpractice by engaging in a sexual relationship with appellant. The record contains no refutation of appellant's allegation; therefore, summary judgment for appellees was inappropriate.

The special concurrence seeks to overrule *Long v. Adams*, 175 Ga. App. 538 (333 SE2d 852) (1985). The special concurrence opines that "to allow the appellant to recover under the facts of this case would in effect have this court endorse a quixotic view that the virtue of women must be defended whether it exists or not." Still not having spent its force, the special concurrence counsels a laissez-faire approach to justice by quoting from a century-old case, *Dyar v. Walton, Whann & Co.*, 79 Ga. 466, 469-470 (1887): "Courts do not attempt to guard men against their own rashness and folly, but will leave them as free agents to protect themselves." Hopefully, we have made some advances in social relations in the past century, and we no longer apply turn-of-the-century industrial revolution principles to the realities

of the present world.

After initially stating that *Long v. Adams* should be overruled if it disagrees with the matters contained in the special concurrence, the special concurrence goes on to say that *Long v. Adams* should be overruled in its entirety because it rewards the "initially promiscuous." The wisdom of *Long* is apparent on the face of the opinion, and no restatement of those reasons is necessary here. Nevertheless, the special concurrence entirely misses the point of *Long*: *Long* simply applied traditional tort principles in holding a party liable for his negligent acts, the same as we have held promiscuous parties liable for the support of the child born out of wedlock. OCGA § 9-11-14; *Cummings v. Carter*, 155 Ga. App. 688 (272 SE2d 552) (1980). See also *McKinsey v. Wade*, 136 Ga. App. 109 (220 SE2d 30) (1975), which allows recovery on behalf of a minor child killed while tampering with a cigarette vending machine which was wired with dynamite; and *Morton v. Gardner*, 242 Ga. 852 (252 SE2d 413) (1979), which allowed a doctor to bring a libel action even though his conduct might have been unethical, felonious, reprehensible, and without good conscience.

The special concurrence would have us adopt its general statements as to the relationship between men and women as being firmly fixed principles in our body of law, and it seizes upon this opportunity to canonize those general statements.

While *Long* serves only as a physical precedent and not a binding precedent since it was a three-judge decision with two judges concurring in judgment only, the special concurrence would have this court take a 180-degree turn in less than a year's time, not because *Long* contained erroneous principles of law but because, when applied, *Long* may produce a result that runs counter to pronouncements made in the special concurrence.

I respectfully dissent from Division 4 of the majority opinion.

DECIDED DECEMBER 5, 1986 —
REHEARING DENIED DECEMBER 19, 1986 —

*Glenville Haldi*, for appellant.
*Daniel S. Reinhardt, James A. Gilbert*, for appellees.