73295. GOLDKIST, INC. v. BROWNLEE et al.
(355 SE2d 773)

BEASLEY, Judge.

The question is whether the two defendant farmers, who as a

partnership both grew and sold their crops, were established by the undisputed facts as not being "merchants" as a matter of law, according to the definition in OCGA § 11-2-104 (1). We are not called upon here to consider the other side of the coin, whether farmers or these farmers in particular *are* "merchants" as a matter of law.[1]

In November 1983, Goldkist sued under OCGA § 11-2-712 for losses arising out of the necessity to cover a contract for soybeans. It produced a written confirmation dated July 22 for 5,000 bushels of soybeans to be delivered to it by defendants between August 22 and September 22 at $6.88 per bushel. A defense was that there was no writing signed by either of the Brownlees, as required by OCGA § 11-2-201 (1).

Affidavits were submitted on both sides, and Barney Brownlee's deposition was taken. Based on the facts which were not in dispute, and favoring the plaintiff's side of the contested facts, the court agreed with the Brownlees that the circumstances did not fit any of the exceptions provided for in Section 201 and granted summary judgment. On appeal, Goldkist asserts that defendants came within subsection (2), relating to dealings "between merchants."

Appellees admit that their crops are "goods" as defined in OCGA § 11-2-105. The record establishes the following facts. The partnership had been operating the row crop farming business for 14 years, producing peanuts, soybeans, corn, milo, and wheat on 1,350 acres, and selling the crops.

It is also established without dispute that Barney Brownlee, whose deposition was taken, was familiar with the marketing procedure of "booking" crops, which sometimes occurred over the phone between the farmer and the buyer, rather than in person, and a written contract would be signed later. He periodically called plaintiff's agent to check the price, which fluctuated. If the price met his approval, he sold soybeans. At this time the partnership still had some of its 1982 crop in storage, and the price was rising slowly. Mr. Brownlee received a written confirmation in the mail concerning a sale of soybeans and did not contact plaintiff to contest it but simply did nothing. In addition to the agricultural business, Brownlee operated a gasoline service station.

In dispute are the facts with respect to whether or not an oral contract was made between Barney Brownlee for the partnership and agent Harrell for the buyer in a July 22 telephone conversation. The plaintiff's evidence was that it occurred and that it was discussed

---

[1] At least two Georgia cases recognize that the undisputed evidence may show that a party is a "merchant" as a matter of law: *Greater Southern Distrib. Co. v. Usry*, 124 Ga. App. 525 (2) (184 SE2d 486) (1971); *Bicknell v. Joyce Sportswear Co.*, 173 Ga. App. 897 (2) (328 SE2d 564) (1985).

soon thereafter with Brownlee at the service station on two different occasions, when he acknowledged it, albeit reluctantly, because the market price of soybeans had risen. Mr. Brownlee denies booking the soybeans and denies the nature of the conversations at his service station with Harrell and the buyer's manager.

In this posture, of course, the question of whether an oral contract was made would not yield to summary adjudication, as apparently recognized by the trial court, which based its decision on the preliminary question of whether the Brownlee partnership was a "merchant."

Whether or not the farmers in this case are "merchants" as a matter of law, which is not before us, the evidence does not demand a conclusion that they are outside of that category which is excepted from the requirement of a signed writing to bind a buyer and seller of goods. Although it is not binding precedent, see *Thunderbird Farms v. Abney*, 178 Ga. App. 335 (343 SE2d 127) (1986), which is instructive on the same question. In so holding, we view all evidence, including reasonable inferences and deductions, in favor of respondent Goldkist. OCGA § 9-11-56 (c); *Georgia Intl. Life Ins. Co. v. Huckabee*, 175 Ga. App. 343, 345 (333 SE2d 618) (1985).

To allow a farmer who deals in crops of the kind at issue, or who otherwise comes within the definition of "merchant" in OCGA § 11-2-104 (1), to renege on a confirmed oral booking for the sale of crops would result in a fraud on the buyer. The farmer could abide by the booking if the price thereafter declined but reject it if the price rose; the buyer, on the other hand, would be forced to sell the crop following the booking at its peril, or wait until the farmer decides whether to honor the booking or not.

Defendants' narrow construction of "merchant" would, given the booking procedure used for the sale of farm products, thus guarantee to the farmers the best of both possible worlds (fulfill booking if price goes down after booking and reject it if price improves) and to the buyers the worst of both possible worlds. On the other hand, construing "merchants" in OCGA § 11-2-104 (1) as not excluding as a matter of law farmers such as the ones in this case, protects them equally as well as the buyer. If the market price declines after the booking, they are assured of the higher booking price; the buyer cannot renege, as OCGA § 11-2-201 (2) would apply.

In giving this construction to the statute, we are persuaded by *Thunderbird Farms*, supra, and the analyses provided in the following cases from other states: *Currituck Grain, Inc. v. Powell*, 38 N. C. App. 7 (246 SE2d 853) (1978); *Rush Johnson Farms v. Mo. Farmers Assn.*, 555 SW2d 61 (Mo. 1977); *Nelson v. Union Equity Co-op. Exchange*, 548 SW2d 352 (Tex. 1977); *Campbell v. Yokel*, 20 Ill. App. 3d 702 (313 NE2d 628) (1974); *Barron v. Edwards*, 45 Mich. App. 210

(206 NW2d 508) (1973). By the same token, we reject the narrow construction given in other states' cases: *Terminal Grain Corp. v. Freeman*, 270 NW2d 806 (S. D. 1978); *Sand Seed Svc. v. Poeckes*, 249 NW2d 663) (Iowa 1977); *Gerner v. Vasby*, 75 Wis.2d 660 (250 NW2d 319) (1977); *Decatur Co-op. Assn. v. Urban*, 219 Kan. 171 (547 P2d 323) (1976); *Lish v. Compton*, 547 P2d 223 (Utah 1976); *Loeb & Co. v. Schreiner*, 294 Ala. 722 (321 S2d 199) (1975); *Cook Grains v. Fallis*, 239 Ark. 962 (395 SW2d 555) (1965).

We believe this is the proper construction to give the two statutes, OCGA §§ 11-2-104 (1) and 11-2-201 (2), as taken together they are thus further branches stemming from the centuries-old simple legal idea *pacta servanda sunt* — agreements are to be kept.[2] So construed, they evince the legislative intent to enforce the accepted practices of the marketplace among those who frequent it.

*Judgment reversed. Birdsong, C. J., Sognier and Pope, JJ. concur. Carley, J., concurs in the judgment only. Deen, P. J., McMurray, P. J., Banke, P. J., and Benham, J., dissent.*

BENHAM, Judge, dissenting.

Because I cannot agree with the majority's conclusion that appellees are merchants, I must respectfully dissent.

Appellant alleges that appellees, doing business as Brownlee Brothers, entered into an oral contract with appellant on July 22, 1983, for the purchase of 5,000 bushels of soybeans at $6.88 per bushel, to be delivered to appellant between August 22 and September 22, 1983. Appellee Barney Brownlee admitted he frequently telephoned appellant's agents and inquired about the current price for soybeans, but both he and his brother, appellee Mark Brownlee, executed affidavits in which they denied they entered into the contract alleged by appellant. Appellees maintain that the contract sent to them violates the Statute of Frauds and is unenforceable because the contract was for the sale of goods for a price greater than $500 and they, as the parties against whom enforcement is sought, did not sign it. See OCGA § 11-2-201 (1). Appellant takes the position that Barney's acknowledged receipt of a confirmation of the contract and his failure to give written notice of any objection he had to its contents within 10 days of receipt deprives appellees of their statute of frauds defense. See OCGA § 11-2-201 (2). The validity of appellant's argument, that sending a confirmation within a reasonable time makes enforceable a contract even though the statute of frauds has not been satisfied, rests upon a showing that the contract was "[b]etween merchants." Id. "Between merchants" is statutorily defined in the

---

[2] From the Commencement Address of Dean Rusk, University of Georgia School of Law, 1986.

Uniform Commercial Code as meaning "any transaction with respect to which both parties are chargeable with the knowledge or skill of merchants." OCGA § 11-2-104 (3). " 'Merchant' means a person [1] who deals in goods of the kind or [2] otherwise by his occupation holds himself out as having knowledge or skill peculiar to the practices or goods involved in the transaction or [3] to whom such knowledge or skill may be attributed by his employment of an agent or broker or other intermediary who by his occupation holds himself out as having such knowledge or skill." OCGA § 11-2-104 (1). Whether appellant is a merchant is not questioned here; the question is whether, under the facts in the record, appellees/farmers are merchants. While the Georgia appellate courts have not expressly addressed the question of whether the farmers of Georgia are, as a matter of law, merchants under OCGA § 11-2-104 (1), in a decision without precedential value under Court of Appeals Rule 35 (b), a panel of this court ruled in a case similar to the one at bar that the question whether a corporate farmer was a merchant was one of fact, not law. *Thunderbird Farms v. Abney*, 178 Ga. App. 335 (343 SE2d 127) (1986). Contrary to the holding of the majority, I do not believe the record in this case establishes that appellees are merchants as that term is used in OCGA § 11-2-201 (2) and defined in OCGA § 11-2-104 (1).

The Official Comment to § 2-104 of the U.C.C. (codified in Georgia as OCGA § 11-2-104 (1)) states: "This Article assumes that transactions between professionals in a given field require special and clear rules which may not apply to a casual or inexperienced seller or buyer . . . This section lays the foundation of this policy by defining those who are to be regarded as professionals or 'merchants' and by stating when a transaction is deemed to be 'between merchants.' The term 'merchant' as defined here roots in the 'law merchant' concept of a professional in business." As noted by the Supreme Court of Kansas in *Decatur Co-op. Assn. v. Urban*, 219 Kan. 171 (547 P2d 323, 328) (1976): "The concept of professionalism is heavy in determining who is a merchant under the statute. The writers of the official UCC comment virtually equate professionals with merchants — the casual or inexperienced buyer or seller is not to be held to the standard set for the professional in business. The defined term 'between merchants,' used in the exception proviso to the statute of frauds, contemplates the knowledge and skill of professionals on each side of the transaction." The Supreme Court of Iowa is also of the opinion that the Official Comment "apparently excludes the casual buyer or seller." *Sand Seed Svc. v. Poeckes*, 249 NW2d 663, 665 (Iowa 1977). Where, as here, the undisputed evidence is that the farmer's sole experience in the marketplace consists of selling the crops he has grown, the courts of several of our sister states have concluded that the farmer is not a

merchant. *Terminal Grain Corp. v. Freeman*, 270 NW2d 806 (S. D. 1978); *Sand Seed Svc. v. Poeckes*, supra; *Decatur Co-op. Assn. v. Urban*, supra; *Lish v. Compton*, 547 P2d 223 (Utah 1976); *Gerner v. Vasby*, 75 Wis2d 660 (250 NW2d 319) (1977); *Cook Grains v. Fallis*, 239 Ark. 962 (395 SW2d 555) (1965); *Loeb & Co. v. Schreiner*, 294 Ala. 722 (321 S2d 199) (1975); *Pierson v. Arnst*, 534 FSupp. 360 (Mont. 1982) applying Montana law. Just because appellee Barney Brownlee kept "conversant with the current price of [soybeans] and planned to market it to his advantage does not necessarily make him a 'merchant.' It is but natural for anyone who desires to sell anything he owns to negotiate and get the best price obtainable. If this would make one a 'merchant,' then practically anyone who sold anything would be deemed a merchant, hence would be an exception under the statute[,] and the need for a contract in writing could be eliminated in most any kind of a sale." *Lish v. Compton*, supra, 547 P2d at 225.

It is also my opinion that the record does not reflect that appellees "dealt" in soybeans, or that through their occupation, they held themselves out as having knowledge or skill peculiar to the practices or goods involved in the transaction. See OCGA § 11-2-104 (1). "[A]lthough a farmer may well possess special knowledge or skill with respect to the production of a crop, the term 'merchant,' as used in the Uniform Commercial Code, contemplates special knowledge and skill associated with the marketplace. As to the area of farm crops, this special skill or knowledge means, for instance, special skill or knowledge associated with the operation of the commodities market. It is inconceivable that the drafters of the Uniform Commercial Code intended to place the average farmer, who merely grows his yearly crop and sells it to the local elevator, etc., on equal footing with the professional commodities dealer whose sole business is the buying and selling of farm commodities." *Pierson v. Arnst*, supra, 534 FSupp. at 362. While appellees might be production experts, there is no evidence reflecting that they were skilled in the marketplace. See *Sand Seed Svc. v. Poeckes*, supra; *Cook Grains v. Fallis*, supra; *Terminal Grain v. Freeman*, supra; *Decatur Co-op Assn. v. Urban*, supra. While there is evidence that appellees produced and sold soybeans, there is no evidence that they trafficked in or bought and sold soybeans. *Nelson & Union Equity Co-op Exchange*, 548 SW2d 352 (Tex. 1977) (dissent). If one who buys or sells something on an annual basis is a merchant, then the annual purchaser of a new automobile is a merchant who need not sign a contract for the purchase in order for the contract to be enforceable. The majority posits that my construction of the word "merchant" would "guarantee to the farmers the best of both possible worlds (fulfill book if price goes down after booking and reject it if price improves) and to the buyers the worst of both possible worlds." Majority opinion, p. 289. The majority's fears

are unfounded. If these farmers are not merchants, a contract signed by both parties is necessary for enforcement. If the farmer signs a contract, he is liable for breach of contract if he fails to live up to its terms. If he does not sign the contract, he cannot seek enforcement of the terms of the purchaser's offer to buy. Furthermore, "[i]f indeed the statute of frauds has, as claimed, permitted an injustice, it is a matter which addresses itself to the legislature." *Loeb & Co. v. Schreiner*, supra, 321 S2d at 202. See also *Cook Grains v. Fallis*, supra, 395 SW2d 555.

Because I find no evidence in the record that appellees meet the statutory qualifications as merchants, I would affirm the decision of the trial court.

I am authorized to state that Presiding Judge Deen, Presiding Judge McMurray, and Presiding Judge Banke join in in this dissent.

DECIDED MARCH 20, 1987.

*Peter Zack Geer*, for appellant.
*Jesse G. Bowles III*, for appellees.